MARKS ET AL., APPELLEES, *v.* C.P. CHEMICAL COMPANY, INC. ET AL., APPELLANTS.

[Cite as Marks *v.* C.P. Chemical Co. (1987), 31 Ohio St. 3d 200.]

(No. 86-946—Decided July 8, 1987.)

*Steven M. Weiss,* for appellees.

*Jackson & Campbell, P.C., Michael J. McManus, Warren Lutz, McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *Robert D. Archibald,* for appellant C.P. Chemical Co., Inc.

*Hesser, Armstrong & Disantis, William E. Armstrong* and *Jeffrey S. Gray,* for appellant Blow-Rite Corp.

*Cronquist, Smith, Marshall & Weaver, John M. Cronquist* and *John A. Valenti,* for appellant U.S.A. Insulation & Weatherproofing, Inc.

GEORGE, J. The sole question is whether the common pleas court abused its discretion in denying certification of a class action pursuant to

Civ. R. 23. Since the Ohio rule is identical to Fed. R. Civ. P. 23, with the exception of Civ. R. 23(F) which is not involved in the discussion here, federal authority is an appropriate aid to interpretation of the Ohio rule. For the reasons set forth below this court holds the trial court did not abuse its discretion.

A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion. (Disallowance upheld, *Schmidt* v. *Avco Corp.* [1984], 15 Ohio St. 3d 310, 312-313, 15 OBR 439, 441, 473 N.E. 2d 822, 824, and allowance upheld, *Vinci* v. *American Can Co.* [1984], 9 Ohio St. 3d 98, 99, 9 OBR 326, 327, 459 N.E. 2d 507, 509.) Abuse of discretion has been defined as more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 232, 12 OBR 313, 315, 466 N.E. 2d 875, 877; *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149.

Furthermore, while a trial court's determination concerning class certification is subject to appellate review on an abuse-of-discretion standard, due deference must be given to the trial court's decision. A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. It is at the trial level that decisions as to class definition and the scope of questions to be treated as class issues should be made. A finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously. Even if the appellate court does find an abuse of discretion, it should not proceed to formulate the class or issue itself. The case should be remanded so that the trial court, which will have responsibility for conducting the trial on a class basis, can provide guidance in the formation of the class and of the issues to be addressed on a class basis. *Ojalvo, supra.* The trial court, with the aid of counsel within the adversarial process, is best equipped to do this.

In denying the Markses' request for class certification, the trial judge found that:

"* * * [C]lass certification is inappropriate as there are differing factual and legal issues as to prospective class members. Also, there is no commonality toward the personal injuries and property damages involved."

"In order to maintain a class action, the requirements of Civ. R. 23(A) and 23(B) must be met." *Schmidt, supra,* at 313, 15 OBR at 441, 473 N.E. 2d at 824. Civ R. 23(A) sets forth four prerequisites which must be satisfied before a class action can be maintained and failure to satisfy any one of the four will result in denial of certification. *Id.* "In addition, it must also be shown [that] the action comes within the purview of at least one of three types of class actions described in Civ. R. 23(B)." *Id.*

The threshold requirements of Civ. R. 23(A) have been met.

## Numerosity

Civ. R. 23(A)(1) requires plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." In construing this requirement, courts have not specified numerical limits, but subclasses have been certified with as few as twenty-three members. *Basile* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* (S.D. Ohio 1985), 105 F.R.D. 506. It is estimated here that the class of purchasers of Tripolymer foam insulation in Ohio numbers at least six thousand. This number is sufficient so as to render joinder infeasible and meets the subdivision (A)(1) requirement.

## Commonality

Civ. R. 23(A)(2) requires the presence of "questions of law or fact common to the class." Courts generally have given this requirement a permissive application. 7A Wright, Miller & Kane, Federal Practice & Procedure (2 Ed. 1986) 169-228, Section 1763. Furthermore, courts are accorded broad discretion in making this determination. See *Vinci, supra.* It is important to note that this provision does not demand that all the questions of law or fact raised in the dispute be common to all the parties. 3B Moore's Federal Practice (1987) 23-159, Paragraph 23.06-1; see, *e.g., Like* v. *Carter* (C.A. 8, 1971), 448 F. 2d 798, certiorari denied (1972), 405 U.S. 1045. Although there may be differing factual and legal issues, such differences do not enter into the analysis until the court begins to consider the Civ. R. 23(B)(3) requirement of predominance and superiority.

In *Miles* v. *N.J. Motors* (1972), 32 Ohio App. 2d 350, 61 O.O. 2d 518, 291 N.E. 2d 758, syllabus, the commonality requirement of subdivision (A)(2) was satisfied with a finding of a "common nucleus of operative facts." Similarly, the federal courts have found commonality at this level in a common fact situation or in generally common legal and factual questions. *Resnick* v. *American Dental Assn.* (N.D. Ill. 1981), 90 F.R.D. 530; *Sweet* v. *General Tire & Rubber Co.* (N.D. Ohio 1976), 74 F.R.D. 333. Here, all the claims stem from installation of a foamed-in-place insulation called Tripolymer in structures owned by putative class members. The complaint also raises legal issues common to the class, such as misrepresentation, breach of warranty, and violation of the state Consumer Sales Practices Act. The threshold requirement of commonality has been met.

## Typicality

Under Civ. R. 23(A)(3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The purpose of this provision is to protect absent class members. 3B Moore's Federal Practice, *supra,* at 23-178, Paragraph 23.06-2. The requirement is met where there is no express conflict between the representative party and the class. *Caruso* v. *Celsius Insulation Resources, Inc.* (M.D. Pa. 1984), 101 F.R.D. 530, 534. Since plaintiffs' situation here is identical to that of putative class members, there is no conflict. The typicality requirement is satisfied.

## Adequacy of Representation

Finally, Civ. R. 23(A)(4) requires that the representative parties must "fairly and adequately protect the interests of the class." Federal courts have referred to this requirement as being of crucial importance in terms of ensuring due process to members of the proposed class who will not have their individual day in court. *Augusta* v. *Marshall Motor Co.* (N.D. Ohio 1977), 453 F. Supp. 912, 917-919. The requirement is generally divided into a consideration of the adequacy of the representative and the adequacy of counsel. *Caruso, supra,* at 534. A representative is deemed adequate so long as his interest is not antagonistic to that of other class members. 3B Moore's Federal Practice, *supra,* at 23-188, Paragraph 23.07[1]; *Vinci, supra.* As owners and residents of homes with Tripolymer insulation, the Markses' interest is compatible with that of other class members who have purchased the insulation for their homes or buildings. The competence and experience of plaintiffs' counsel in class action litigation is undisputed. Accordingly, the requirements of Civ. R. 23(A)(4) have been satisfied.

Once it has been ascertained that the threshold requirements have been met, it is necessary to review the three types of class actions described in Civ. R. 23(B) to determine if this action can be maintained under one of those provisions. Plaintiffs here sought to have the class certified under Civ. R. 23(B)(1), (B)(2), and (B)(3).

Civ. R. 23(B)(1)(b) permits class certification if prosecution of individual actions would create a risk of adjudication which would either be dispositive of the interests of others not party to the suit or would substantially impair or impede their ability to protect their interests. This section has been interpreted as protection for later litigants who may be deprived of recovery due to the success of earlier litigants. The scenario painted by plaintiffs is one in which potential claims could exceed $15 million; it is asserted that early litigants would deplete the fund available to pay successful claimants. Plaintiffs failed, however, to produce evidence of the likely insolvency of the defendants. *Abed* v. *A.H. Robins Co.* (C.A. 9, 1982), 693 F. 2d 847, certiorari denied (1983), 459 U.S. 1171. Accordingly, class certification pursuant to Civ. R. 23(B)(1)(b) was properly denied.

Civ. R. 23(B)(2) permits class certification when:

"[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *."

Plaintiffs argue that a class action was maintainable under this provision to provide for future diagnostic testing for every class member. Courts have ruled, however, that this provision is inapplicable where the primary relief requested is damages. *Eisen* v. *Carlisle & Jacquelin* (C.A. 2, 1968), 391 F. 2d 555, vacated on other grounds (1974), 417 U.S. 156; *School Dist. of Lancaster* v. *Lake Asbestos of Quebec, Ltd.* (C.A. 3, 1986),

789 F. 2d 996, 999-1000, certiorari denied (1986), 479 U.S. ___, 93 L. Ed. 2d 117, 291. Therefore, class certification pursuant to Civ. R. 23(B)(2) was also properly denied.

Civ. R. 23(B)(3) provides that a class action may be maintained if two requirements are met: (1) that questions of law or fact common to members of the class predominate over individual questions, and (2) that a class action is superior to other methods of resolving the controversy. This court discussed these two requirements in *Schmidt, supra.* For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication. *Id.* at 313, 15 OBR at 442, 473 N.E. 2d at 825. Whether or not a class action is the superior method of adjudication requires a comparative evaluation of other available procedures to determine if the judicial time and energy involved would be justified. *Id.*

The Advisory Committee Notes to the comparable Fed. R. Civ. P. 23(b)(3) provision state that a "mass accident" causing injuries to numerous persons is generally not appropriate for class action treatment because "significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." The notes express the fear that such an action conducted as a class action "would degenerate in practice into multiple lawsuits separately tried." A number of cases denying class certification point to this statement in support of their reluctance to apply class action procedures to mass torts.

The Staff Notes to the Ohio rule, however, suggest subdivision (B)(3) of Rule 23 may be appropriate for maintenance of class actions in mass accident situations. A fact pattern involving an airplane crash, for example, posing the same liability questions for each passenger even though damages would differ, might present a suitable candidate for class action. Repetitious adjudication of liability, utilizing the same evidence over and over, could be avoided, although separate suits on individual damages would still be necessary.

Subdivision (C)(4) of Rule 23 enables courts to refine the issues even further. Courts are beginning to explore the options made available to them through subdivision (C)(4) in the mass tort area. See, *e.g., School Dist. of Lancaster, supra.* It is necessary at this point to discuss the import of Civ. R. 23(C)(4) in a court's consideration of a request for class certification.

Subdivision (C)(4)(a) of the rule authorizes the court to allow a class action to be maintained with respect to particular issues. It was upon this provision that the appellate court here based its reversal, finding that the trial court had abused its discretion in failing to consider the possibility of limiting the class issues. The appellate court then determined that two issues could be procedurally severed and tried separately as a class action.

The two issues, as identified by the appellate court, are: (1) whether Tripolymer emits formaldehyde, and (2) what was represented by defendants through advertising and brochures as to the presence or absence of formaldehyde in the insulation.

Civ. R. 23(C)(4) was designed to give trial courts maximum flexibility in handling class actions. It enables courts to restructure complex cases to meet the other requirements for maintaining a class action. See, generally, 7B Wright, Miller & Kane, *supra,* at 268-285, Section 1790. Thus, the advantages and economies of adjudicating issues that are common to the entire class on a representative basis can be secured even though other issues may have to be litigated separately by individual class members. *Id.* at 271. The effect of applying subdivision (C)(4) may be to make the common issues in the recast class action predominate for purposes of Civ. R. 23(B)(3). 7A Wright, Miller & Kane, *supra,* at 546, Section 1778.

The relationship between the federal Rule 23(c)(4) provision and the predominance requirement of federal Rule 23(b) was discussed in *In re Tetracycline Cases* (W.D. Mo. 1985), 107 F.R.D. 719, 727. If the issues proposed to be severed under subdivision (c)(4) were required to predominate in the usual Rule 23(b) sense, when compared with all the issues in the case, there would be no need or place for Rule 23(c)(4), the court concluded. Rather, the court opined that the predominance requirement in the context of a partial class certification request under Fed. R. Civ. P. 23(c)(4)(A) should simply be that "* * * the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole." *Id.* at 727. The effect of this would be to lessen the importance of the predominance requirement as such, the court admitted; but this would be offset by an increase in the importance accorded the superiority requirement, since material advancement toward disposition of the litigation as a whole would be an advantage that would weigh heavily toward finding that a class action would be a superior method of resolving the matter.

The determination of whether or not to certify particular issues pursuant to Civ. R. 23(C)(4) is still discretionary with the court. A court may find the noncommon issues are inextricably entangled with the common issues *(Caruso, supra),* or that the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis *(Eisen, supra).* The *Caruso* case, which involved urea formaldehyde foam insulation ("UFFI"), is particularly instructive.

The facts of *Caruso* are very similar to the case at bar. Class certification was sought for both property damage and personal injuries as a result of the emission of toxic formaldehyde gas from the insulation. The court rejected plaintiff's request to sever certain issues pursuant to federal Rule 23(c)(4), noting that "* * *[e]ven if the harmful nature of defendant's product were shown, a multitude of separate trials would be required." *Caruso, supra,* at 538.

Because the product was mixed on the site by different installers, the court said it was not even persuaded that the litigation involved one readily identifiable product. And if it does not, the court continued, "* * * the litigation of any single issue would accomplish nothing of value for any of the classes alleged by plaintiff." Furthermore, the court concluded that "* * * events prior to the occurrence of the tort, [the] nature of the wrong, identity of the responsible parties, standard of care owed to class members, legal liability, a compensatory damage formula, and the award of punitive damages * * * [were] all individual, rather than common, questions." *Id.* at 538-539.

Some of the same problems exist here. The insulation is mixed on the jobsite. Two of the three components have a limited shelf life and must be stored under specified temperature conditions. They must be mixed in carefully prescribed ratios, at precise pressure and temperature levels. Ventilation in the structure to be insulated must be good. Heat and moisture could affect the product. Structural defects may cause the insulation to deteriorate because of exposure to high temperature and humidity. As was noted in the *Caruso* case, the product that is the source of the litigation here may not be a single, readily identifiable product. Consequently, a class determination that a particular substance emits formaldehyde may not advance the overall litigation, because the substances involved in individual cases will differ.

A class determination of what was represented by defendants through advertising and brochures as to the presence or absence of formaldehyde in the insulation is similarly unhelpful. The plaintiff here acknowledged that his decision was based on a salesman's oral representations, not on the printed materials he was given. Regardless of what was printed in advertising or brochures, an individual determination would have to be made in every case as to what the purchaser read or was told concerning the content of the product, as well as the individual's reliance on those representations when making the decision to buy. There is nothing to be gained by ascertaining on a class basis what the advertising and brochures said.

Thus it can be seen that neither of the two issues the court of appeals identified as appropriate for class treatment represents a significant aspect of the case. Therefore, they do not meet the Civ. R. 23(B)(3) predominance requirement set forth by this court in *Schmidt, supra,* at 313, 15 OBR at 441, 473 N.E. 2d at 824. It must be concluded that the trial court did not abuse its discretion in denying class certification.

The judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment accordingly.*

MOYER, C.J., MAHONEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MAHONEY, J., of the Ninth Appellate District, sitting for SWEENEY, J.

GEORGE, J., of the Ninth Appellate District, sitting for LOCHER, J.