OPINION.
The plaintiffs-appellants, John Begala, Steven Borchers, and Cynthia Borchers, appeal from the trial court's amended order, entered nunc pro tunc, striking all class-action allegations from their complaint. The putative class consists of customers of PNC Bank, Ohio, N.A., who, by participating in the bank's "payment holiday," accepted its offer to postpone one monthly payment on their respective consumer loans by paying an "extension fee." As a class, the participants claim that PNC misrepresented the offer by failing to disclose that the extension fee was in addition to the compound interest payable over the life of the loan. The class-action claims against PNC include fraud, negligence, breach of contract, rescission, promissory estoppel, breach of fiduciary duty, civil conspiracy, and unjust enrichment.[1] Notwithstanding each class member's need to prove inducement and reliance, we hold that appellants satisfied the predominance test of Civ.R. 23(B)(3) because PNC's alleged misrepresentation of a material fact is common to the entire class. Therefore, we find that the trial court abused its discretion when it denied class certification.[2]
 I.
Twice each year since the early 1980's, PNC and its predecessor in interest, Central Trust Company, N.A., have notified "valued loan customers" by form letter of its "payment holiday" plan. PNC's typical letter informing the loan customer of this opportunity stated:
PNC Bank would like to help you accumulate some extra cash during the vacation season by giving you an opportunity to postpone one loan payment.
Here's how it works. The authorization form attached below lists a loan extension fee which is the payment you make now in order to postpone your regular payment. Simply sign the authorization and forward it along with your extension fee payment. Your loan term will automatically be extended by the one payment you're postponing now.
That's all there is to it. This offer is good until July 31, 1993 so you can postpone your June or July payment. If you'd like to take advantage of this offer, here's your chance. Remember, just sign and detach the authorization provided below and return it with your extension payment in the enclosed envelope. We must receive your authorization and extension payment prior to your regular payment date in the month during which you wish to postpone payment.
If you have any questions regarding this offer please call 651-talk.
Sincerely,
Customer Finance Division
This is your authorization to extend my installation loan # one month beyond the present maturity. The extension fee is.
Sign and Return with your Check
This action was brought by the appellants on behalf of themselves and the proposed class consisting of all persons who obtained at least one loan from PNC or Central Trust and who accepted the offer of a "payment holiday." The appellants maintain that the issue common to all members of the proposed class is whether PNC misrepresented the true cost of accepting a "payment holiday." According to the appellants, by telling its customers that the extension fee "is the payment you make now in order to postpone your regular payment," PNC misled the entire class. The statement is misrepresentative, they claim, since the true cost of the extension was the extension fee plus additional hidden compound interest charges over the life of the loan as a result of the deferred monthly payment.
In its entry granting PNC's motion to strike the class allegations from the complaint, the trial court concluded that the requirements of Civ.R. 23(B)(3) had not been satisfied. Specifically, the trial court found that "proof of the plaintiffs' reliance and the reasonableness or justifiability of such reliance" were individual issues that predominated over those issues common to the class on its claims of fraud, misrepresentation, promissory estoppel, rescission, and civil conspiracy. We disagree.
A class action is an action filed by a class representative on behalf of, or against, an entire group of persons with common issues that make a collective lawsuit more efficient. Before a case may be certified as a class action, a trial judge must make seven affirmative findings under Civ.R. 23, five of which are specifically set forth in the rule and two of which are implicit.Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91,521 N.E.2d 1091, first paragraph of the syllabus; Klocke v. AD, Ltd.Partnership (1993), 90 Ohio App.3d 317, 318-319, 629 N.E.2d 49,50. The trial judge has broad discretion to determine if a class action may be maintained, and that decision will not be disturbed without a showing of abuse of discretion. Marks v. C.P. Chem.Co., Inc. (1987), 31 Ohio St.3d 200, 509 N.E.2d 1249, syllabus.
Of the seven class action prerequisites, the trial court in its decision addressed only the prerequisite of predominance. Counsel for the parties agree that whether the predominance requirement of Civ.R. 23(B)(3) has been satisfied in the instant case depends upon analysis of four cases: Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310,473 N.E.2d 822; Marks, supra; Hamilton v. Ohio Sav.Bank (1998), 82 Ohio St.3d 67, 694 N.E.2d 442, and Cope v.Metropolitan Life Ins. Co. (1998), 82 Ohio St.3d 426,696 N.E.2d 1001.
In order for the predominance requirement to be satisfied, questions of law or fact common to the class members must predominate over any questions affecting only individual members. "For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication." Marks, supra, at 204, 509 N.E.2d at 1254.
Civ.R. 23(B)(3) imposes the additional requirement that a class action must be superior to other methods for fair and efficient resolution of the case. The determination of this question "requires a comparative evaluation of other available procedures to determine if the judicial time and energy involved would be justified." Id.
The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability of or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
Hamilton, supra, at 79-80, 694 N.E.2d at 453-454, citing 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986) 518, Section 1777; Cope, supra, at 430,696 N.E.2d at 1004.
In Cope, the Ohio Supreme Court held that the predominance requirement was satisfied by allegations that an insurer's agents engaged in a scheme to earn higher commissions by selling replacement policies as new insurance to its policyholders without the mandatory disclosure warnings. The Cope court concluded that allegations of misrepresentations used in standardized form documents may well be the basis for class treatment. The Court held that it was unnecessary to prove by direct evidence the elements of inducement and reliance upon material omissions. Where misrepresentations in form letters are at issue, as here, "proof of reliance * * * may be sufficiently established by inference or presumption." Id. at 435-436, 969 N.E.2d at 1008, citing Hamilton, supra, at 83-84, 694 N.E.2d at 456. "Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements." Id. at 436,696 N.E.2d at 1008.
In Hamilton, the precursor to Cope, the Ohio Supreme Court reversed the trial court's denial of class certification where the plaintiffs challenged the methods used to amortize their residential mortgage loans. The putative class had brought common-law claims for breach of contract, fraud, conversion, waiver and estoppel, unjust enrichment and violation of a statutory claim under the Federal Truth in Lending Act, Section 1601 et seq., Title 15, U.S.Code. In reversing the trial court, the Hamilton court explained:
In this case, the questions of law and fact which have already been shown to be common to each respective subclass arise from identical or similar form contracts. The gravamen of every complaint within each subclass is the same and relates to the use of standardized procedures and practices. No individual has attempted to institute a parallel action or to intervene in this action, and it is unlikely that any new suits will be filed given the relatively small individual recoveries and the massive duplication of time, effort and expense that would be involved.
Hamilton, supra, at 77, 694 N.E.2d at 452.
According to Hamilton, under Civ.R. 23(A)(2) "if there is a common nucleus of operative facts, or a common liability issue, the rule [of commonality] is satisfied." Id., citing Marks, supra, at 202,
509 N.E.2d 1252-1253; Warner, supra, at 91, 521 N.E.2d 1091, paragraph three of the syllabus. Here, allegations of PNC's scheme to induce its loan customers by misrepresentation in the body of its form letter distinguish this case from one in which various distinct misrepresentations were allegedly made to each member of the class.
PNC argues that the critical language in its letter is, "[y]our loan term will automatically be extended by the one payment you're postponing now." According to PNC, this language was sufficient to fully advise its customers of the financial consequences of the "payment holiday" because "loan term" is commonly understood to mean the length of the loan during which interest accrues. Therefore, PNC argues, there was no misrepresentation by omission in the letter. Alternatively, PNC argues that if the language is considered ambiguous, the trial court correctly concluded that appellants cannot prove on a class-wide basis how each class member interpreted the letter when making the decision to skip one payment. To buttress this argument, PNC contends that the issue of reliance presents individualized issues of proof because of the possibility that additional oral statements were made to an unknown number of class members who accepted the letter's invitation to call 651-talk "if you have any questions regarding this offer."
PNC argues that Cope and Hamilton are, therefore, distinguishable because those cases only apply to uniform written documents that are subject to only one uniform interpretation. PNC contends that this case falls more appropriately under the analysis in Schmidt,supra, in which class certification was denied to plaintiffs who asserted, in part, that they were entitled to compensation from their employer under a written separation pay policy. InHamilton, however, the Ohio Supreme Court expressly stated that "Schmidt did not purport to establish a rule that any claim containing a necessary element of reliance is ipso facto excluded from class action treatment." Hamilton, supra, at 83,694 N.E.2d at 456. The Court in Hamilton distinguished Schmidt upon the basis that the elements of reliance and inducement in Schmidt
involved "noncommon issues that are either inextricably entangled with common issues or are too unwieldy to be handled adequately on a class basis." Id. According to the Court in Hamilton, the result is different where the claims "arise from standardized forms or routinized procedures, notwithstanding the need to provereliance." Id. (emphasis supplied). In such case, according to the Court, it is permissible to infer that the decision of the class was influenced by the misrepresentation. Id. at 84,694 N.E.2d at 456. "Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove [inducement and reliance]." Id. at 436, 696 N.E.2d at 1008.
The trial court's conclusion, therefore, that a class action was defeated in this case because of the need to inquire into the understanding of each member of the putative class is not in accord with Cope or Hamilton. In Hamilton, the bank argued similarly that the various claims would require the court to inquire into each borrower's understanding of the terms of their loan. Rejecting this argument, the Supreme Court in Hamilton
cited with approval the decision of the Oregon Supreme Court inDerenco, Inc. v. Benjamin Franklin Fed. Sav. Loan Assn. (1978),281 Or. 533, 577 P.2d 477. In Derenco, the Oregon court rejected the argument that individual inquiries into the knowledge of the class of commercial borrowers would defeat class certification, reasoning as follows:
We have a uniform class of borrowers who were submitted an identical (insofar as material here) adhesion contract under strictly regimented procedures. The only unknown factor is the knowledge of each borrower concerning the use of the deposits by defendant for its own purposes. It is our conclusion that the proof here indicates that it is `unlikely' that "numerous" members of the class possessed such knowledge or that the subject of the beneficial interest in the funds even occurred to them. It is therefore proper that this proceeding continue as a class action. In answer to the possible argument that no claims arising out of separate contractual situations are proper for class action treatment, we acknowledge that there is no doubt they present special problems. However, had it been the intention of the legislature to exclude contractual situations from class action relief, we believe it would have said so.
Id. at 572-573, 577 P.2d at 499, quoted in Hamilton, supra, at 82,694 N.E.2d at 455. In Hamilton, the Supreme Court concluded that the entire class should have been certified "with respect to all claims." Id. at 87, 694 N.E.2d at 459.
Here, the only way for PNC's customer's to take advantage of the "payment holiday" offer was to sign the standardized acceptance form attached to the letter and return it to PNC with the stated extension fee. In so doing, it can be inferred that each putative class member first read the letter and made the decision to accept the "payment holiday" offer in reliance upon the information provided therein.
It must be remembered that, in assessing the propriety of the class action allegations, a court's considerations do not involve the merits of the action. Ojalvo v. Bd. of Trustees of Ohio StateUniv. (1984), 12 Ohio St.3d 230, 233, 466 N.E.2d 875, 877. Allegations in the complaint are assumed to be true. Ungerbuhlerv. Butler Rural Elec. Coop., Inc. (Jan. 31, 1985), Hamilton App. No. C-840227, unreported. Assuming, therefore, that PNC misrepresented the cost of extending the loan through its "payment holiday" program, any potential liability to individual class members turns principally upon examination of PNC's form letter to its loan customers and their executed authorization to PNC. Therefore, the trial court's order striking appellants' class action allegations because individual issues predominate over the class issues is contrary to the Ohio Supreme Court's interpretation of Civ.R. 23(B)(3) in Cope and Hamilton.
A class action in this case serves both the needs of justice and judicial economy. The class mechanism satisfies the purposes for a class action due to the small recovery for each individual in separate actions. Hamilton, supra, at 80, 694 N.E.2d at 454. Certification of the class also insulates PNC against the prospect of facing endless litigation by its loan customers. Accordingly, common questions predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of this controversy.
 II.
Finally, the trial court concluded that the class members' breach-of-contract claim is dependent on whether their underlying loan agreement with PNC "forbade charging interest during the period of deferment." Because copies of their underlying loan agreements were not attached to the complaint, the trial court granted PNC's motion to strike the contract claim pursuant to Civ.R. 10(D). The substance of the contract claim, however, is not based on the bank's breach of the underlying loan agreements with its customers, but relates solely to the separate form letter and standardized procedures for acceptance of the "payment holidays." These materials were attached to the complaint.
 III.
In sum, we find that the trial court abused its discretion in granting PNC's motion to strike the allegations relating to the putative class from the appellants' complaint and in denying class certification. As noted by the Ohio Supreme Court in Marks, when an appellate court finds an abuse of discretion in the trial court's refusal to certify a class, it should not proceed to formulate the class itself. "The case should be remanded so that the trial court, which will have responsibility for conducting the trial on a class basis, can provide guidance in the formation of the class and the issues to be addressed on a class basis."Marks, supra, at 201, 509 N.E.2d at 1252. Accordingly, the trial court's judgment is reversed and this cause remanded to the trial court for proceedings consistent with this Opinion.
Judgement reversed and cause remanded.
 Hildebrandt, P.J., and Painter, JJ., concur.
[1] Dismissal of the plaintiffs' claim in the United States District Court under the Federal Truth in Lending Act, Section 1601 et seq., Title 15, U.S. Code, was affirmed in Begala v. PNCBank, Ohio, N.A. (C.A.6, 1998), 163 F.3d 948. The district court's dismal of their RICO and National Bank Act claims in Case No. C-1-97-717 (S.D. Ohio) is currently on appeal.
[2] In granting PNC's motion to strike the allegations from the complaint, the trial court effectively denied class certification, and it is uncontested by the parties that the order is immediately appealable pursuant to R.C. 2502.02(B)(5).