OPINION
{¶ 1} Defendants-appellants Purdue Pharma L.P., et al., appeal a decision from the Butler County Common Pleas Court certifying a class action brought by plaintiffs-appellees, LaDonna Howland, et al., regarding the prescription drug, OxyContin.
 {¶ 2} OxyContin is an analgesic drug, which is made in tablet form and bound by a time-released matrix. The controlled release nature of OxyContin permits continuous dosing for a 12-hour period from a single tablet. Some persons have abused OxyContin by crushing or dissolving the tablet thereby permitting the immediate administration of the tablet's entire 12-hour dose. The existing formulation does not contain an "antagonist" that would prevent its abuse from crushing or dissolving a tablet.
 {¶ 3} OxyContin was designed, tested, manufactured, promoted, marketed, sold, and distributed by Purdue Pharma, L.P., along with its affiliates, Purdue Pharma, Inc., The Purdue Frederick Company, Purdue Pharmaceuticals, L.P., The P.F. Laboratories, Inc., and PRA Holdings, Inc. (hereinafter, "Purdue"). Purdue had an agreement with Abbott Laboratories and Abbott Laboratories, Inc. (hereinafter, "Abbott") to "co-promote" OxyContin to hospitals and certain physicians.
 {¶ 4} Dr. Timothy Smith is a licensed physician in this state, who specializes in the treatment of pain. Dr. Smith has prescribed OxyContin for some of his patients, including LaDonna Howland. Howland was first prescribed OxyContin for pain stemming from injuries she sustained in an automobile accident in 1999. She continued receiving prescriptions for OxyContin for approximately 18 months. Howland has allegedly experienced addiction, drug dependency and withdrawal symptoms as a result of her use of OxyContin.
 {¶ 5} Ronald Schaffer was first prescribed OxyContin (by a physician other than Dr. Smith) after undergoing heart surgery in 1998. He continued receiving prescriptions for OxyContin for approximately two years. Lillian Lakes was first prescribed OxyContin (by a physician other than Dr. Smith) following a mastectomy in November 1999. She continued receiving prescriptions for the drug through 2000. Both Schaffer and Lakes allegedly suffered several adverse effects, including drug dependence, as a result of their using OxyContin.
 {¶ 6} On December 31, 2001, LaDonna Howland, along with Ronald Schaffer and his wife, Martha, and Lillian Lakes and her husband, Fred, (hereinafter, referred to collectively as "appellees") filed a second amended class action complaint for damages on behalf of themselves and all others similarly situated in this state who were improperly prescribed OxyContin and damaged by the use or abuse of that drug. Named as defendants in the action were Purdue, Abbott and Dr. Smith (hereinafter, referred to collectively as "appellants").
 {¶ 7} Appellees alleged that appellants failed to exercise reasonable care in the design, manufacture, marketing, promotion, sale, prescribing or distribution of OxyContin; failed to warn them and others similarly situated of the risks posed by OxyContin; breached their expressed warranty that OxyContin was a safe, effective treatment for pain; and breached their implied warranty that OxyContin was of merchantable quality and safe for its intended use. Appellees sought certification for the following three classes:
 {¶ 8} "(a) All persons in the State of Ohio that were prescribed OxyContin and thereafter suffered, and/or continue to suffer, the effects of the drug such as the risk of addiction, actual addiction, and the consequences of addiction;
 {¶ 9} "(b) All persons in the state of Ohio that were prescribed OxyContin and thereafter suffered, and/or continue to suffer, the effects of the drug such as physical, mental, and/or emotional harm, death and/or loss of consortium, as a result of the use of OxyContin;
 {¶ 10} "(c) All persons in the State of Ohio that suffered, and/or continue to suffer, the effects of the drug such as physical, mental, and/or emotional harm, death and/or loss of consortium, as a result of the use and abuse of OxyContin by others."
 {¶ 11} In February 2002, the trial court heard oral arguments on the class certification issue. All parties submitted documentary evidence, including depositions, in support of their respective positions. On August 30, 2002, the trial court granted appellees' motion to certify the three proposed classes.
 {¶ 12} Purdue, Abbott and Dr. Smith all separately appealed from the trial court's decision. The appeals have been consolidated for review.
 {¶ 13} Purdue's assignment of error states:
 {¶ 14} "THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS/APPELLEES' MOTION FOR CLASS CERTIFICATION."
 {¶ 15} Abbott's assignment of error states:
 {¶ 16} "THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS TO DEFENDANTS-APPELLANTS ABBOTT LABORATORIES, INC."
 {¶ 17} Dr. Smith's assignment of error states:
 {¶ 18} "THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING A CLASS ACTION AGAINST THE DEFENDANT TIMOTHY SMITH, M.D. [sic]."
 {¶ 19} Given the similarities of the issues presented, these assignments of error will be addressed jointly.
 {¶ 20} Appellants each argue that the trial court erred in granting appellees' motion to certify the three proposed classes against them because appellees failed to meet the requirements of Civ.R. 23(A) and (B).[1]
 {¶ 21} "The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met." Hamilton v.Ohio Sav. Bank, 82 Ohio St.3d 67, 71, 1998-Ohio-365, citing Civ.R. 23(A) and (B), and Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91. The first two of these seven prerequisites are implicitly required by Civ.R. 23, while the remaining five are explicitly set forth therein. Id. at 94. The trial court must find, by a preponderance of the evidence, that all seven of these requirements have been met before certifying the case as a class action. Id.
 {¶ 22} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." Marks v. C.P.Chem. Co. Inc. (1987), 31 Ohio St.3d 200, syllabus. "However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Hamilton,82 Ohio St.3d at 70.
 {¶ 23} We conclude that the trial court did not abuse its discretion in determining that the case could proceed as a class action against Purdue and Abbott. We also conclude, however, that the class definitions need to be modified so that they do what appellees themselves claim, i.e., "eliminate Ohio residents who initially secured OxyContin through unlawful means."
 {¶ 24} First, the definitions of the three classes proposed by appellees are precise enough to permit the trial court to determine, within a reasonable effort, whether a particular individual is a class member. See Hamilton at 72. Purdue and Abbott argue that the proposed class definitions include those who obtained OxyContin prescriptions illegally. To this extent we agree that the class definitions need to be modified to ensure that they eliminate any Ohio resident who initially secured OxyContin through unlawful means. Appellees argue that such modification is not necessary, but acknowledge that "[t]o the extent * * * the class definition needs modification * * * this Court can affirm the Trial Court's certification and require a modification of the class definition." We choose to do just that. See Warner, 36 Ohio St.3d at 99. On remand, the trial court will modify the class definitions to ensure that they eliminate any Ohio resident who initially secured OxyContin through unlawful means.
 {¶ 25} Purdue and Abbott also argue that appellees have not defined the term, "suffered," as used in the definitions of the classes. However, the trial court has properly ruled that it will give the term its common and ordinary meaning. Subject to the trial court's modification of the class definitions to ensure that Ohio residents who initially secure OxyContin through unlawful means are eliminated from the three classes, the class definitions proposed by appellees are unambiguous and class members are readily identifiable.
 {¶ 26} Second, it appears from the evidence presented that the named representatives are members of at least one of the three proposed classes and that all of the named representatives have proper standing to sue. "The class membership prerequisite requires only that `the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent.'" Hamilton, 82 Ohio St.3d at 74, quoting 5 Moore's Federal Practice (3 Ed. 1997) 23-57, Section 23.21[1]. Here, each of the appellees possesses the same interest and suffered the same injury shared by the members of the class they will represent.
 {¶ 27} Third, there is evidence to show that each of the proposed classes is so numerous that joinder of all members is impracticable. Over one million prescriptions for OxyContin have been filled in retail pharmacies in this state from June 1998 to December 2001. This evidence is sufficient to establish the impracticality of joinder against Purdue and Abbott. See Marks, 31 Ohio St.3d at 202, Warner, 36 Ohio St.3d at 97, andHamilton, 82 Ohio St.3d at 75.
 {¶ 28} Fourth, there is evidence to show the existence of questions of fact and law that are common to all members of the proposed classes. "It is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied." Id. at 77, citing Marks, 31 Ohio St.3d at 202. Here, there are common issues of fact regarding whether Purdue and Abbott negligently promoted or marketed OxyContin, and whether Purdue and Abbott knowingly concealed material facts about the nature and qualities of OxyContin from appellees and the classes of persons they represent.
 {¶ 29} Fifth, appellees' claims are typical of those of the classes they represent, and there is no express conflict between the class representatives and the classes. See Hamilton,82 Ohio St.3d at 77. Purdue argues that typicality cannot be established where numerous questions of law and fact exist. We disagree. While the defenses or claims of the class representatives must be typical of the defenses or claims of the class members, they need not be identical. PlannedParenthood Assn. of Cincinnati, Inc. v. Project Jericho (1990),52 Ohio St.3d 56, 64. Here, appellees' causes of action will be identical to the ones raised by the class members they represent, and although there may be some defenses that will not apply to all class members, many of the defenses will be the same.
 {¶ 30} Sixth, there is evidence to show that the class representatives are adequate to represent members of the proposed classes. The "adequacy of representation" requirement "is generally divided into a consideration of the adequacy of the representative and the adequacy of counsel." Marks, 31 Ohio St.3d at 203. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." Id. Here, appellees' claims are not antagonistic to those of the class members they represent, since they are all based on Purdue's and Abbott's alleged wrongful conduct in designing, manufacturing or promoting OxyContin. Furthermore, appellees' attorneys are experienced in handling class action litigation.
 {¶ 31} Seventh, the requirements for certifying a class action under Civ.R. 23(B)(3) have been met in this case as to Purdue and Abbott. Civ.R. 23 provides in relevant part:
 {¶ 32} "(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 {¶ 33} "* * *
 {¶ 34} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."
 {¶ 35} Both Purdue and Abbott argue that the trial court abused its discretion in finding that questions of law and fact common to members of the classes predominate over issues affecting only individual members of the classes. Purdue and Abbott also argue that a class action is not the superior method of resolving this controversy because individual issues predominate over common ones.
 {¶ 36} However, it has been held that "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." Cope v. Metro. Life Ins. Co., 82 Ohio St.3d 426, 429-430,1998-Ohio-405, quoting Lockwood Motors, Inc. v. Gen. Motors Corp.
(D.Minn. 1995), 162 F.R.D. 569, 580. "The key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims." Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed. 1977), at 45, quoted in Warner, 36 Ohio St.3d at 96.
 {¶ 37} Here, appellees presented evidence that Purdue and Abbott engaged in a common, class-wide course of conduct, inasmuch as they failed to issue warnings regarding such matters as OxyContin's addictive nature, the inappropriateness of using OxyContin for certain ailments like arthritis pain, and the danger of crushing OxyContin tablets. There was also evidence presented showing that Purdue and Abbott distributed false and misleading promotional materials, and promoted and sold a defectively designed product (i.e., OxyContin, which lacked an antagonist). As the trial judge explained, certifying appellees' claims as a class action will allow the trial court to resolve the common questions raised by Purdue's and Abbott's conduct before addressing the individual questions of each class member. If the trial court finds that Purdue and Abbott were not negligent, did not fail to provide warning, or did not breach any express or implied warranties, the case, or at least that cause of action, will end as to Purdue and Abbott if they can make such a showing. However, forcing appellees and the class members they represent to pursue Purdue and Abbott individually would result in the presentation of redundant evidence and arguments, and increased litigation costs.
 {¶ 38} Abbott also argues that the trial court erred in finding that it was a "manufacturer, distributor and seller" of OxyContin. Abbott argues that it only co-promoted OxyContin to a limited group of physicians. Abbott argues that only one of the four claims appellees have brought against it, namely, the negligence claim, can be asserted against it, because the remaining claims (for strict liability/failure to warn, and breach of express and implied warranties) are not available against a nonmanufacturer or nonseller as a matter of law. However, we agree with appellees that these issues, which will involve an analysis of the merits of the case, should be addressed by way of a motion to dismiss or a motion for summary judgment, rather than this interlocutory proceeding.
 {¶ 39} We acknowledge that it "is conceivable that a significant amount of time may be spent in this case litigating questions affecting only individual members of the classes. However, clockwatching is neither helpful nor desirable in determining the propriety of class certification. * * * A court should not `determine predominance by comparing the time that the common issues can be anticipated to consume in the litigation to the time that individual issues will require. Otherwise, only the most complex common questions could predominate since such issues tend to require more time to litigate than less complex issues.'" (Citations omitted.) Hamilton, 82 Ohio St.3d at 85. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the common questions predominate over the individual questions in the action brought against Purdue and Abbott, and that a class action is the superior method of resolving this controversy.
 {¶ 40} While we find that the trial court did not abuse its discretion by certifying the class action against Purdue and Abbott, we nevertheless conclude that the trial court did abuse its discretion by certifying a class action against Dr. Smith because, as to him, questions affecting only individual members of the class predominate over the questions of law or fact common to members of the classes. Alternatively, we conclude that a class action is not the superior method for the fair and efficient adjudication of the controversy.
 {¶ 41} Appellees have proceeded against Dr. Smith on two bases. First, they have argued that he was negligent in prescribing OxyContin to his patients, including class representative LaDonna Howland.
 {¶ 42} However, a physician's decision to prescribe OxyContin to any patient must be based on a number of factors that are unique to that individual. As Dr. Smith states:
 {¶ 43} "The claims of each putative class member arise out of unique circumstances, including different levels of exposure to OxyContin, different alleged effects of the exposure, and different reasons for the exposure. These unique circumstances, which are part and parcel of the prescribing decision * * *, undermine any conclusion that elements common to all claimants predominate over the individual issues."
 {¶ 44} Therefore, we conclude that as to this aspect of appellees' claims, the questions of fact affecting only individual members predominate over questions of law and fact common to the members of the classes.
 {¶ 45} Second, appellees have sought to emphasize Dr. Smith's role in "promoting" OxyContin through his involvement in educational presentations, in which Dr. Smith touted the benefits of OxyContin. Appellees cite Dr. Smith's "promotional" activities as their justification for naming Dr. Smith as one of the defendants in this class action. However, in our view, Dr. Smith's promotional activities provide an insufficient basis for concluding that common issues of fact and law predominate over issues affecting only individual members of the class.
 {¶ 46} The facts in this case show that Dr. Smith's activities could have impacted only a small percentage of the certified classes. For example, it is unknown how many physicians who prescribed OxyContin did so because of Dr. Smith's presentations. Furthermore, while there was evidence to show that Dr. Smith prescribed OxyContin more than 300 times in less than a three-month period, this represents only a tiny fraction of the more than one million prescriptions for OxyContin that were written in this state from June 1998 to December 2001. And it should be remembered that Dr. Smith is not being sued as a representative of a class of defendant physicians in this state who have prescribed OxyContin. Appellees have failed to establish a connection between the injuries of any plaintiff or class member other than Howland to Dr. Smith's actions. Under these circumstances, we believe that it was unreasonable for the trial court to find that questions of law or fact common to members of the classes predominated over any questions affecting only their individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For these reasons, we conclude that the trial court abused its discretion in certifying the class action against Dr. Smith.
 {¶ 47} Purdue Pharma's and Abbott's assignments of error are sustained in part and overruled in part. Dr. Smith's assignment of error is sustained.
 {¶ 48} The trial court's judgment is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
BROGAN, J., concurs.
VALEN, P.J., concurs in part and dissents in part.
[1] {¶ a} Civ.R. 23(A) and (B) state:
{¶ b} "Rule 23. CLASS ACTIONS
{¶ c} "(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
{¶ d} "(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
{¶ e} "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
{¶ f} "(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
{¶ g} "(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
{¶ h} "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
{¶ i} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."