OPINION
{¶ 1} Appellants, The Penn Central Corporation and its successor American Premier Underwriters, Inc. (collectively "Penn Central"), appeal from the April 25, 2006 judgment entry of the Trumbull County Court of Common Pleas, granting the motion for *Page 2 
class certification of appellees, Paula D. and Steven D. Maas ("the Maases"), Deborah L. Johlin-Bach and Gary W. Bach ("the Bachs").
 {¶ 2} The following factual background and procedural history were taken from Penn Central's first appeal before this court, Maas v. PennCent. Corp., 11th Dist. No. 2003-T-0123, 2004-Ohio-7233 ("first appeal"), in which we reversed and remanded the judgment of the trial court on December 23, 2004.
 {¶ 3} Penn Central and its predecessors acquired multiple right-of-way land easements across Ohio to construct and operate railroads. In 1970, Penn Central filed a petition for reorganization under Section 77 of the Federal Bankruptcy Act. As a result of this petition, and the financial plight of other railroad operators, Congress enacted the Regional Rail Reorganization Act of 1973 ("RRRA"). The RRRA created the Consolidated Rail Corporation ("Conrail") and conveyed a majority of Penn Central's assets to Conrail.
 {¶ 4} On April 1, 1976, pursuant to a bankruptcy court order, the majority of Penn Central's rail properties designated in a "Final System Plan" was conveyed to Conrail. Following this order, Penn Central had no authority to operate a railroad or resume the operation of a railroad, as that authority was transferred to Conrail.
 {¶ 5} Despite the cessation of railroad operations, in 1978, Penn Central initiated what was entitled the "Asset Disposition Program." That program attempted to raise revenue by selling Penn Central's purported interest in any right of way accumulated and formerly used by Penn Central for transportation purposes.
 {¶ 6} In 1997, the Maases received a form letter from Penn Central notifying them that an auction would be held to sell the right of way corridor that was adjacent to *Page 3 
and traversed their land. Penn Central also posted signs along this right-of-way corridor advertising the auction. The Maases challenged Penn Central, claiming ownership of the right of way corridor. Although the Maases were successful in preventing the auction, Penn Central refused to issue a release clarifying the Maases' ownership of the right of way corridor.
 {¶ 7} Like the Maases, the Bachs owned land adjacent to a right-of-way corridor previously used by Penn Central. Penn Central ultimately sold the right-of-way corridor to the Sandusky County Parks District.
 {¶ 8} On April 15, 1999, the Maases and the Bachs (collectively "appellees") filed a complaint on behalf of themselves and all others similarly situated against Penn Central. Appellees' complaint requested class certification and set forth the following claims: (1) slander of title; (2) unjust enrichment; (3) theft; (4) securing writings by deception; (5) trespass; and (6) a declaratory judgment declaring appellees' ownership interest in the easements. The basis of these claims was that, under Ohio law, as contended by appellees, a railroad operator's ownership interest in a right-of-way easement is extinguished when the land ceases to be used for railroad purposes. Thus, appellees concluded that the ownership interest in the right-of-way easements reverted to the adjacent and underlying landowners.
 {¶ 9} With respect to class certification, the complaint stated as follows:
 {¶ 10} "The named Plaintiffs represent a Class consisting of all persons who own or have owned land in the [s]tate of Ohio at all relevant times next to or over which Penn Central or its predecessors either had a right of way for railroad purposes that is no longer used for those purposes or owned a qualified estate that terminated upon *Page 4 
discontinuation of railroad operations and who have a right to clear title to the abandoned right of way or terminated estate."
 {¶ 11} Penn Central filed a timely answer. On September 15, 2000, appellees filed a motion for class certification and a memorandum in support, which maintained that there existed a certifiable class pursuant to Civ.R. 23. Moreover, the memorandum asserted that class certification was the most efficient and suitable method to bring forth the foregoing claims.
 {¶ 12} On October 31, 2000, Penn Central filed a memorandum in opposition to appellees' motion for class certification, arguing that appellees' six claims were not appropriate for a class action lawsuit, as each claim would require an individualized analysis of the separate class members. Penn Central further maintained that the class did not meet the commonality, typicality, and adequacy requirements under Civ.R. 23(A). Also, Penn Central concluded that class certification was inappropriate since the primary focus of the lawsuit was monetary damages, and because the class failed to meet the predominance and superiority requirements under Civ.R. 23(B)(2).
 {¶ 13} Appellees' motion for class certification proceeded to a hearing before the court on October 10, 2001. During the hearing, appellees provided testimony which established the proximity of their land in relation to the right of way corridors and disclosed the factual events that resulted in the complaint's claims.
 {¶ 14} Following the hearing, the parties submitted proposed findings of fact and conclusions of law with the court. On March 21, 2003, appellees filed a motion for leave to amend the class action complaint. Specifically, appellees sought leave to revise a portion of their declaratory judgment claim to exclude those individuals who purchased *Page 5 
property from Penn Central from becoming a class member. Thus, only those underlying and adjacent landowners could join the class.
 {¶ 15} On August 8, 2003, the trial court issued a judgment entry which granted appellees' motion for leave to amend the complaint and certified this matter as a class action. The court determined that this matter was to be maintained as a class action under Civ.R. 23(B)(2), as to the claims for declaratory and injunctive relief, and under Civ.R. 23(B)(3), as to all other claims. Appellees were the designated representatives of the class with respect to all claims except the claim for slander of title; only appellee Steven D. Maas was designated as the representative for the slander of title claim. Finally, the court defined the class as follows:
 {¶ 16} "All persons, other than the United States government or the government of any state, who own or, between April 1, 1976, and the present have owned land in the [s]tate of Ohio underlying or adjacent to a railroad right-of-way corridor on which Penn Central or its predecessors in interest operated a railroad and that has not been used for railroad purposes since April 1, 1976."
 {¶ 17} It was from the August 8, 2003 judgment entry that Penn Central filed a timely notice of appeal with this court. In its first appeal, Penn Central set forth four assignments of error:
 {¶ 18} "[1.] The Class Certification Order must be reversed pursuant to this court's decision in Martin v. Grange Mutual Ins. Co.
 {¶ 19} "[2.] The trial court erred and abused its discretion in certifying the class because the requirements for class certification are not met. *Page 6 
 {¶ 20} "[3.] The trial court erred and abused its discretion in certifying the class because the class fails to satisfy the requirements of Civ.R. 23(A).
 {¶ 21} "[4.] The trial court erred and abused its discretion in granting class certification under Civ.R. 23(B) because the class does not satisfy any of the three requirements of that rule."
 {¶ 22} In the first appeal, this court only addressed Penn Central's first assignment of error and noted that it was premature for us to discuss the remaining assignments. We agreed with Penn Central's contention that since the trial court failed to find even in a conclusory manner that each of the prerequisites for class certification was met, the matter needed to be reversed and remanded. In reaching our conclusion that Penn Central's first assignment of error had merit, we indicated the following:
 {¶ 23} "[t]he trial court * * * merely stated that the class was certified without comment or explanation. As a result, we are unable to conclude, from either the record or the appealed judgment entry, whether the trial court carefully applied the class action requirements and conducted a rigorous analysis into whether they were satisfied. The minimal language of the judgment entry before us precludes us from determining if `the ruling was consistent with the sound exercise of discretion.' * * *. This case presents complicated issues that require a more detailed analysis that includes the reasons supporting certification.' * * *." (Citations omitted.) Maas, supra, at ¶ 32.
 {¶ 24} Pursuant to this court's remand, on April 25, 2006, the trial court issued a twenty-one page "Judgment Entry On Class Certification." In that entry, the trial court granted appellees' motion to certify this case as a class action under Civ.R. 23, using the same August 8, 2003 class definition. It is from that judgment that Penn Central *Page 7 
filed a timely notice of appeal and makes the following assignments of error in this second appeal:
 {¶ 25} "[1.] The trial court abused its discretion in certifying the class because the requirements for class certification are not met.
 {¶ 26} "[2.] The trial court abused its discretion in certifying the class because the class fails to satisfy all of the requirements of Civ.R. 23(A).
 {¶ 27} "[3.] The trial court erred and abused its discretion in granting class certification under Civ.R. 23(B) because [appellees] fail to satisfy any of the three requirements of that rule."
 {¶ 28} In its first assignment of error, Penn Central argues that the trial court abused its discretion in certifying the class because the requirements for class certification were not met.
 {¶ 29} When deciding whether to certify a class action, a trial court is given broad discretion. In re Consol. Mtge. Satisfaction Cases,97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 5. Therefore, a trial court's decision to grant certification of a class action will not be disturbed absent an abuse of that discretion. Id. An abuse of discretion connotes more than a mere error of law or judgment; instead, it implies that the court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} Under Civ.R. 23, seven prerequisites must be met before a court may certify a case as a class action:
 {¶ 31} "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the *Page 8 
class must be so numerous that joinder of all members is impractical; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied." In re Consol.Mtge. Satisfaction Cases, supra, at ¶ 6.
 {¶ 32} "The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Hamilton v. Ohio Sav.Bank (1998), 82 Ohio St.3d 67, 70. "[I]n determining the propriety of class certification under Civ.R. 23, trial courts [should] make separate written findings as to each of the seven class action requirements, and specify their reasoning as to each finding." Id. at 71.
 {¶ 33} In the case at bar, based on the April 25, 2006 appealed judgment entry, it is clear that the trial court carefully and correctly applied the class action requirements and conducted a rigorous analysis in determining that the seven prerequisites of Civ.R. 23 were satisfied. The trial court made separate written findings with respect to each of the seven class action requirements and specified its reasoning as to each finding in its April 25, 2006 judgment entry.
 {¶ 34} At issue here are requirements one, five, six, and seven. Thus, we will only address those requirements in detail.
 {¶ 35} The first requirement specifies that an identifiable class must exist. In its April 25, 2006 judgment entry, the trial court concluded that the class definition meets *Page 9 
the identifiable class requirement pursuant to Civ.R. 23(A). Again, the class definition is as follows:
 {¶ 36} "All persons, other than the United States government or the government of any state, who own or, between April 1, 1976, and the present have owned land in the [s]tate of Ohio underlying or adjacent to a railroad right-of-way corridor on which Penn Central or its predecessors in interest operated a railroad and that has not been used for railroad purposes since April 1, 1976."
 {¶ 37} Among other cases, the trial court properly relied onWarner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 96, for the proposition that "[Civ.R.] 23 requires, albeit implicitly, that an identifiable class must exist before certification is permissible. * * * The definition of the class must be unambiguous." (Citation omitted.) The Supreme Court further indicated that "[c]lasses such as `all people active in the peace movement,' `all people who have been or may be harassed by the police' and `all poor people,' are too amorphous to permit identification within a reasonable effort and thus may not be certified." Id.
 {¶ 38} Here, the class definition is unambiguous. As such, the first requirement is met.
 {¶ 39} The fifth requirement specifies that the claims or defenses of the representatives must be typical of the claims or defenses of the class members. In its judgment entry, the trial court concluded that appellees' claims arose from the same course of conduct of Penn Central which gave rise to the claims of the other class members. Specifically, the trial court determined that Penn Central's common course of conduct gave rise to the claims of appellees as well as to the claims of the entire class. *Page 10 
Also, the trial court indicated that appellees' claims typify those of the entire class because they are based on the same legal theories, which include slander of title, unjust enrichment, theft, trespass, and declaratory judgment.
 {¶ 40} Accordingly, the fifth requirement is satisfied.
 {¶ 41} The sixth requirement provides that the representatives must fairly and adequately protect the interests of the class. In its judgment entry, the trial court determined that appellees are adequate representatives of the class because their interests are not antagonistic to that of other class members. The trial court indicated that appellees' interests are in concert rather than in conflict with other class members' interests. It stated that appellees have suffered the same type of harm as the other class members, and have demonstrated sufficient interest in the outcome to ensure vigorous advocacy. The trial court held that the Bachs are disqualified from representing the class as to the slander of title claim only. However, the trial court maintained that Penn Central has not demonstrated and there is no evidence in the record to show that the Bachs cannot adequately represent the interests of the class as to all other claims.
 {¶ 42} Thus, the sixth requirement is met.
 {¶ 43} The seventh requirement specifies that the action must fit within at least one of the categories of Civ.R. 23(B). Here, appellees satisfied this requirement under Civ.R. 23(B)(2) and (3).
 {¶ 44} Civ.R. 23(B)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby *Page 11 
making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"
 {¶ 45} In this case, in addition to monetary damages, appellees sought declaratory and injunctive relief. The trial court indicated that the main theory here is that Penn Central has engaged in a course of conduct common to the class in deliberately claiming a continuing interest in the right of way land that had lapsed, and in denying the ownership interest of the class members. The trial court stated that granting the declaratory and injunctive relief that appellees seek is of greater value to the class members than monetary relief because it will enable them to make full and productive use of their land without interference by Penn Central. The trial court concluded that class certification is appropriate under Civ.R. 23(B)(2) because Penn Central acted or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief with respect to the whole class appropriate.
 {¶ 46} Civ.R. 23(B)(3) provides that legal or factual questions common to the class members must "predominate over any questions affecting only individual members," and that a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy."
 {¶ 47} In the case sub judice, the trial court determined that questions of law and fact common to the class members transcend questions affecting only individual members. Thus, the trial court indicated that the predominance requirement of Civ.R. 23(B)(3) was met. In addition, the trial court stated that if the instant action were not certified as a class, the result would be a massive, wasteful, and unnecessary *Page 12 
duplication of effort and expense by both the parties and the courts. Also, the trial court said that many prospective class members would not prosecute a separate lawsuit against Penn Central due to the high cost of instituting and pursuing individual litigation. Therefore, the trial court concluded that the superiority requirement of Civ.R. 23(B)(3) was met.
 {¶ 48} As such, the seventh requirement is satisfied.
 {¶ 49} Based on the foregoing, the trial court did not abuse its discretion in certifying the class because the requirements for class certification were met.
 {¶ 50} Penn Central's first assignment of error is without merit.
 {¶ 51} In its second assignment of error, Penn Central contends that the trial court abused its discretion in certifying the class because the class failed to satisfy all of the requirements of Civ.R. 23(A). Penn Central alleges that the class is overbroad and not easily identifiable. It maintains that the typicality requirement was not satisfied because the interests of the named representatives are antagonistic to the interests of the class. Penn Central argues that appellees are not adequate representatives of the class due to the fact that their interests were in conflict with the class; their slander of title claims are time-barred; and they have no theft by deception claim.
 {¶ 52} Civ.R. 23(A) provides: "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Page 13 
 {¶ 53} With respect to Civ.R. 23(A)(1), numerosity, class certification is proper where the "class is so numerous that joinder of all members is impracticable[.]" Generally, if a proposed class consists of more than forty individuals, numerosity is met. Warner, supra, at 97.
 {¶ 54} In this matter, Penn Central no longer uses hundreds of miles of right of way corridor throughout the state of Ohio for railroad purposes, which includes a very large number of adjacent property owners. Also, as previously mentioned, there has been a conspicuous lack of parallel actions, due to the high cost of instituting and pursuing individual litigation. We cannot say that the trial court abused its discretion in finding that the numerosity requirement was met.
 {¶ 55} Civ.R. 23(A)(2), the commonality requirement, is met where there is either a "common nucleus of operative facts" or where legal or factual issues are common to the class. Marks v. C.P. Chem. Co. (1987),31 Ohio St.3d 200, 202. It is not necessary that all legal and factual questions be common to the class. Id. If legal or factual issues differ, the court will evaluate whether those differences defeat class certification when it analyzes the predominance and superiority requirements of Civ.R. 23(B)(3). Id. The commonality requirement should be given a permissive application. Id.; Warner, supra, at 97.
 {¶ 56} In the case at bar, the claims arise from a common nucleus of operative fact, namely Penn Central's Asset Disposition Program. Also, common legal and factual questions exist as to liability. As such, the trial court did not abuse its discretion in finding that the commonality requirement was met. *Page 14 
 {¶ 57} Civ.R. 23(A)(3), typicality, requires that the claims of the class representatives must be typical of the class members' claims. "Typical" does not mean "identical." Planned Parenthood Assn. ofCincinnati, Inc. v. Project Jericho (1990), 52 Ohio St.3d 56, 64. The purpose of the typicality requirement is to protect absent class members. Marks, supra, at 202. The court has held that "[t]he requirement is met where there is no express conflict between the representative party and the class." Id.
 {¶ 58} In the instant matter, there is no express conflict between the class representatives and the class members. Appellees' claims arise from the same course of conduct which gives rise to the claims of the other class members, and are based on the same legal theories. Therefore, the trial court did not abuse its discretion in determining that the typicality requirement was met.
 {¶ 59} Civ.R. 23(A)(4), adequacy of representation, has two components: first, the class representatives must fairly and adequately represent the class, and second, class counsel must be experienced in handling class action litigation. Warner, supra, at 98. These requirements protect the due process rights of the absent class members who will not, individually, have their "day in court." Marks, supra, at 203. The first component, the adequacy of the class representatives, is satisfied as long as the class representatives' interests are not antagonistic to the class members' interests. Id.
 {¶ 60} In this case, appellees are adequate representatives of the class because their interests are not antagonistic to that of other class members. The claims asserted are based on the same legal theories and both appellees and the other class members seek the same type of judicial relief. The fact that one or some class members' claims may be time-barred does not impede class certification. "`* * * [A]s long as there is a *Page 15 
sufficient nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3).' 5 Moore's Federal Practice (3 Ed. 1997) 23-210 to 23-211, Section 23.46[3]." Hamilton, supra, at 84. Although Penn Central contends in its appellate brief that the Maases' slander of title claim was also untimely, it only argued before the trial court that the Bachs' slander of title claim was untimely. As such, the trial court held in its judgment entry that the Bachs are disqualified from representing the class as to the slander of title claim only.
 {¶ 61} With respect to the second component of Civ.R. 23(A)(4), we note that it is not contested here. The trial court did not abuse its discretion in finding that the first component was met.
 {¶ 62} Penn Central's second assignment of error is without merit.
 {¶ 63} In its third assignment of error, Penn Central alleges that the trial court erred and abused its discretion in granting class certification under Civ.R. 23(B)(2) and (3). Penn Central contends that the trial court ignored identical federal law which constitutes an abuse of discretion.
 {¶ 64} In addition to satisfying the requirements of Civ.R. 23(A)(1)-(4), parties seeking class certification must also satisfy one of the prerequisites of Civ.R. 23(B). Here, we will discuss whether appellees satisfied Civ.R. 23(B)(2) and (3), the two categories that appellees moved to certify this action. Although previously addressed in Penn Central's first assignment of error, we further note the following with regard to Civ.R. 23(B). *Page 16 
 {¶ 65} Civ.R. 23(B) provides: "[a]n action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 {¶ 66} "* * *
 {¶ 67} "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 {¶ 68} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."
 {¶ 69} The provision in Civ.R. 23(B)(2) is inapplicable when the primary relief sought is damages. Warner, supra, at 95; Marks, supra, at 203. Again, appellees have sought monetary damages in addition to declaratory and injunctive relief. Penn Central has acted or refused to act on grounds generally applicable to the class. Appellees seek to stop Penn Central's wrongful behavior. Thus, injunctive or declaratory relief is appropriate to the class as a whole. The trial court properly certified the class under Civ.R. 23(B)(2). *Page 17 
 {¶ 70} Before certifying a class under Civ.R. 23(B)(3), the trial court must find that common questions of law or fact predominate over questions of law or fact affecting only individuals ("predominance") and that the class action is a superior method of resolving the litigation ("superiority"). With regard to the predominance requirement, it is not enough that some common questions exist. Rather, they must form a "significant aspect" of the case and it must be possible to resolve these common questions for all members in a single adjudication.Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310, 313. With regard to the superiority requirement, the trial court must evaluate all methods of adjudication to determine whether a class action is superior. In doing so, the trial court should consider the four factors listed in Civ.R. 23(B)(3).
 {¶ 71} In the case sub judice, again, we agree with the trial court that common questions, which revolve around Penn Central's Asset Disposition Program, predominate. Any individual title issues can be determined after the common issues are resolved. See Schneider v. UnitedStates (D.Neb. 2000), 197 F.R.D. 397. We also agree with the trial court that the class action is the superior method for resolving this litigation. Again, a single trial would be more efficient than a voluminous number of separate trials that could lead to inconsistent results. The facts do not demonstrate that this case is unmanageable. The trial court determined that it would not have to construe thousands of deeds for which there is no claim. Also, no antagonism exists between class members.
 {¶ 72} Additionally, Penn Central relies on Howland v. Purdue PharmaL.P., 104 Ohio St.3d 584, 2004-Ohio-6552, for the proposition that a trial court that ignores *Page 18 
identical federal law abuses its discretion. We note that with respect to the instant case, Penn Central's reliance on Howland is misplaced.
 {¶ 73} Howland was a mass tort case involving the prescription drug OxyContin. Id. at ¶ 1. The trial court granted a motion for class certification and the Twelfth District affirmed. Id. The Supreme Court of Ohio was asked to determine whether the trial court abused its discretion in certifying a statewide class of individuals who asserted injuries allegedly arising from using OxyContin. Id. at ¶ 17.
 {¶ 74} The Supreme Court reversed the judgment of the appellate court because "the trial court failed to analyze or even mention any of the specific problems argued by the appellants." Id. at ¶ 21. The Supreme Court indicated that "[f]ederal courts, considering similar suits against these appellants, have demonstrated appropriate consideration of appellants' arguments." Id. at ¶ 22. The Supreme Court reasoned that "[a] trial court that dispenses with a party's arguments in such a fashion, fails to examine a well-established doctrine, and ignores nearly identical federal proceedings does not merely misconstrue the letter and spirit of the law — it ignores them." Id. at ¶ 26.
 {¶ 75} Unlike Howland, the trial court here not only mentioned, but fully analyzed, Penn Central's arguments. Federal law was briefed extensively. In reaching its determination to designate the case as a class action, the trial court not only looked at Ohio law, it also considered and made numerous references to federal cases throughout its twenty-one page April 25, 2006 judgment entry. Thus, contrary to Penn Central's contention, there is no evidence that the trial court ignored federal law.
 {¶ 76} Accordingly, the trial court did not abuse its discretion in finding that the requirements of Civ.R. 23(B)(3) have been met. *Page 19 
 {¶ 77} Penn Central's third assignment of error is without merit.
 {¶ 78} For the foregoing reasons, Penn Central's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
 CYNTHIA WESTCOTT RICE, P.J., DIANE V. GRENDELL, J., concur. *Page 1