[Cite as *Barrow v. New Miami*, 2016-Ohio-340.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| DOREEN BARROW, et al., | : | |
| Plaintiffs-Appellees, | : | CASE NO. CA2015-03-043 |
| | : | O P I N I O N |
| - vs - | | 2/1/2016 |
| | : | |
| VILLAGE OF NEW MIAMI, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-07-2047

Rittgers & Rittgers, Charles H. Rittgers, 12 East Warren Street, Lebanon, Ohio 45036; Markovits, Stock & DeMarco, LLC, Paul M. DeMarco, 119 East Court Street, Suite 530, Cincinnati, Ohio 45202; and Michael K. Allen & Associates, Michael K. Allen, Joshua Adam Engel, 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202, for plaintiffs-appellees, Doreen Barrow, Diane Woods, Michelle Johnson and Don Muirheid

Rendigs, Fry, Kiely & Dennis, LLP, Wilson G. Weisenfelder, Jr., James J. Englert, Laura I. Hillerich, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202, for defendant-appellant, village of New Miami

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, the village of New Miami, appeals a decision of the Butler County Court of Common Pleas certifying a class action challenging the constitutionality of a municipal ordinance. For the reasons outlined below, we affirm.

## I. INTRODUCTION

### A. Facts

{¶ 2} New Miami operates a civil enforcement program to deter motorists from exceeding the speed limit at several intersections in its village. The Automated Speed Enforcement Program (ASEP) was instituted in July 2012 with the adoption of Ordinance 1917. If a vehicle exceeds the posted speed limit, a camera photographs the license plate and the registered owner of the vehicle receives a Notice of Liability in the mail.

{¶ 3} Pursuant to the Notice of Liability, motorists may pay the penalty and thereby waive the right to a hearing. Alternatively, motorists may request a hearing within 30 days from the date of the violation. The hearing is conducted by a hearing officer appointed by the mayor of New Miami. As outlined in the notice, motorists may proffer one of four affirmative defenses at the hearing: the vehicle was stolen, someone else was driving the vehicle, the vehicle was loaned to someone, or the license plate was not clearly discernable in the photograph.

{¶ 4} A motorist may appeal the result of the hearing to the Butler County Court of Common Pleas. Motorists who neglect to pay the penalty are subject to a late fee and are reported to a collection agency, and the judgment against them is conveyed to credit reporting agencies.

### B. Procedure

{¶ 5} In July 2013, six named plaintiffs (hereinafter "appellees") filed suit against New Miami challenging the Ordinance. This was followed by an amended complaint which advanced four causes of action. Count I sought a declaration that the Ordinance divested the municipal court of jurisdiction over traffic violations in contravention of the Ohio

Constitution.[1]  Count II sought a declaration that the Ordinance violated appellees' due process rights.  Count III prayed for injunctive relief prohibiting continued enforcement of the allegedly unconstitutional Ordinance.  Finally, Count IV sought equitable restitution for any penalties or fees paid by appellees pursuant to the allegedly unconstitutional Ordinance.

{¶ 6} In March 2014, the trial court granted summary judgment to appellees on Counts I, II, and III.[2]  The court also certified a class comprised of all persons who had received Notices of Liability under New Miami's ASEP.  New Miami appealed the certification decision.

{¶ 7} In the first appeal, this court reversed and remanded for the trial court to clarify its Civ.R. 23 findings in support of certification.  *Barrow v. New Miami*, 12th Dist. Butler No. CA2014-04-092, 2014-Ohio-5743 (*Barrow I*).  The trial court issued a decision complying with our remand instructions in February 2015.  This appeal followed.

## II. ANALYSIS

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN CERTIFYING A CLASS ACTION UNDER CIVIL RULE 23(B)(2) WITH TWO SUBCLASSES, AND IN APPOINTING PLAINTIFFS WOODS AND JOHNSON AS [SUB]CLASS 1 REPRESENTATIVES AND PLAINTIFF MCGUIRE AS SUBCLASS 2 REPRESENTATIVE.

{¶ 10} New Miami's sole assignment of error challenges the trial court's decision to

---

1. Appellees' amended complaint purported to invoke "R.C. §2720.02" as a basis for declaratory relief. No such section exists. Declaratory judgment actions are governed by Chapter 2721 of the Ohio Revised Code. We presume this was merely a typographical error in the complaint, given the fact that appellees clearly titled Count I "Declaratory Judgment – Infringement on Jurisdiction of the Mayor's Court and the Municipal Court" and Count II "Declaratory Judgment – Violation of Ohio Constitution." Moreover, the Revised Code section cited by appellees was only off by one number.

2. Appellees filed their motions for partial summary judgment and class certification simultaneously. The trial court's entry granting partial summary judgment preceded its entry granting class certification by about three weeks. The wisdom and effect of determining liability before sanctioning a class is not before this court, but we note the procedural anomaly.

certify the class. New Miami argues that the trial court failed to consider the threshold issue of whether the class representatives possessed jurisdictional standing to file suit. New Miami insists that the trial court erroneously equated the Civ.R. 23 class membership prerequisite with jurisdictional standing. Alternatively, New Miami urges that appellees failed to satisfy the requirements of Civ.R. 23.

### A. Standing to Sue Versus Standing to Represent the Class

{¶ 11} Part of the confusion in this case arises from the commingling of terminology for two legal concepts which are, in fact, distinct: standing to sue and standing to serve as a class representative. A brief review of the relevant law should provide clarity.

{¶ 12} Subject matter jurisdiction refers to a court's power to hear and decide a case on the merits. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75, 1998-Ohio-275. Jurisdiction and justiciability are threshold considerations in every case, without exception. *Cf. Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197 (1975). Even where a court possesses subject matter jurisdiction over a matter, it shall refuse to hear a case that is not justiciable. *Id. See also ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 11 ("Article IV, Section 4[B] provides that the courts of common pleas 'shall have such original jurisdiction over all *justiciable matters*'"). (Emphasis in original.) Examples of issues affecting justiciability are ripeness, mootness, and standing.

{¶ 13} Individual standing to sue is an indispensable requirement that must be present at the inception of every lawsuit, including class actions. *Woods v. Oak Hill Community Med. Ctr.*, 134 Ohio App.3d 261, 269 (4th Dist.1999). There is no separate "class action standing" requirement. 1 Rubenstein, *Newberg on Class Actions*, Section 2.1, at 59 (5th Ed.2011). Rather, once individual standing is met, plaintiffs must satisfy the class representation prerequisites contained in Civ.R. 23(A) and the action must fall into one of the categories delineated in Civ.R. 23(B). *Id.*

{¶ 14} What New Miami deems "jurisdictional standing" contemplates justiciability, which effectively acts as a limitation upon jurisdiction. *Warth* at 498. Regardless of nomenclature, New Miami correctly asserts that all class members, including the representatives, must satisfy the threshold requirement of standing in order for the lawsuit to be justiciable. "Standing is a preliminary inquiry that must be made before a trial court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9.

{¶ 15} In other words, a litigant must have a personal stake in the outcome of the controversy to file suit. *Cf. Anderson v. Brown*, 13 Ohio St.2d 53 (1968), paragraph one of the syllabus. The classic three-part test for making this determination was outlined by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992). Pursuant to *Lujan*, a plaintiff demonstrates a sufficient stake in the controversy only if he or she can show an injury in fact, causation, and redressability. *Id.* at 560-561. *See also Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 22 (implementing the *Lujan* test). "These three factors – injury, causation, and redressability – constitute 'the irreducible constitutional minimum of standing.'" *Id.*, quoting *Lujan* at 560. This is the concept of standing which New Miami challenges.

## B. Deciding the Standing Issue Does Not Engage the Merits

{¶ 16} Appellees maintain that New Miami invites this court to consider the merits of the complaint under the guise of standing. It is true that the certification stage of a class action is not an appropriate time to delve into the merits of a case. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St. 3d 230, 233 (1984). The allegations in the complaint are to be accepted as true rather than analyzed during certification. *Begala v. PNC Bank*, 1st Dist. Hamilton No. C-990033, 1999 WL 1264187, *5 (Dec. 30, 1999). The merits may be examined only where inextricably intertwined with the "rigorous analysis" of the certification

elements. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 29-44, analyzing *Wal-Mart v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011). This inquiry is exceedingly limited, permitting scrutiny of the merits only to the extent necessary to ascertain the propriety of certification. *Stammco* at ¶ 33.

{¶ 17} These limitations notwithstanding, New Miami correctly asserts that a determination of the threshold issue of standing for justiciability purposes does not implicate an assessment of the merits of appellees' claims. It is well-established that standing does not hinge upon the merits of a claim that certain governmental action is unconstitutional. *Moore* at ¶ 23. To the contrary, "standing turns on the nature and source of the claim asserted by the plaintiffs." *Id. See also Warth*, 422 U.S. at 500. As the United States Supreme Court explained:

> [I]n ruling on standing, it is both appropriate and necessary to look to the substantive issues * * * to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. For example, standing requirements will vary in First Amendment religion cases depending upon whether the party raises an Establishment Clause claim or a claim under the Free Exercise Clause. Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke [ ] judicial power.

(Citation omitted.) *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942 (1968). *Accord Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, ¶ 18. Thus, we must analyze standing with an eye towards the particular claims advanced by appellees in their complaint. *Moore* at ¶ 23.

### C. Did Appellees Have Standing to File This Lawsuit?

{¶ 18} Properly framed to fit this case, our inquiry is whether appellees have standing to pursue a declaratory judgment action challenging the constitutionality of Ordinance 1917 implementing New Miami's ASEP. Specifically, we examine whether appellees have

standing to assert that the Ordinance violates the due course of law provision in the Ohio Constitution. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 48 (noting that the due course of law provision in the Ohio Constitution is analogous to the Due Process Clause of the United States Constitution).

{¶ 19} It should be emphasized that our inquiry does not assess whether the Ordinance itself is constitutional. *Moore* at ¶23. Such an analysis would involve a three-part test that is distinct from the *Lujan* test for standing. *See, e.g., In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 18 (applying the three-part procedural due process test enunciated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 [1976]). Rather, our focus in the present matter concerns whether there is a sufficient nexus between the status asserted by appellees and their due process claim. *Flast* at 102.

{¶ 20} In order to possess standing to challenge the facial constitutionality of an ordinance, "the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 1999-Ohio-123. This reflects the *Lujan* standard for determining standing.

1. **Did Appellees Suffer a Direct and Concrete Injury Different From That Suffered by the General Public?**

{¶ 21} Yes. The general public may fear or dislike the automated traffic cameras and avoid all intersections in New Miami where the cameras are positioned. But only persons whose vehicles were recorded by the automated traffic cameras received Notices of Liability. Whether they paid the penalties or not, these individuals incurred repercussions not suffered by the general public. Thus, the group of individuals who received the Notice of Liability was

injured in a manner distinct from the public generally. *See, e.g., League of United Latin Am. Citizens v. Kasich*, 10th Dist. Franklin No. 10AP-639, 2012-Ohio-947, ¶ 32.

## 2. Did the Ordinance Cause Appellees' Injury?

{¶ 22} Yes. "[When] the plaintiff is himself an object of the action (or foregone action) at issue * * *, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Clifton*, 131 Ohio St.3d 287, 2012-Ohio-780, at ¶ 16, quoting *Lujan*, 504 U.S. at 561-562. Here, but for the civil traffic enforcement program established pursuant to Ordinance 1917, appellees would not have received the Notices of Liability and incurred the attendant financial repercussions.

## 3. Will the Relief Requested Redress Appellees' Injury?

{¶ 23} Yes. If Ordinance 1917 is declared unconstitutional on its face, New Miami's ASEP cannot continue to operate as established under the ordinance. Operation of the program would be halted by the injunctive relief requested by appellees. Effectively, any Notices of Liability issued pursuant to this unconstitutional program would be void. Regarding those appellees who paid the penalty, any funds collected pursuant to the program would be disgorged pursuant to the relief requested under appellees' unjust enrichment claim. Regarding those who did not pay, actions undertaken by collection agencies and credit reporting agencies would presumably have to be rescinded because the program upon which they were founded was unconstitutional.

{¶ 24} Because all three prongs are met, we hold that appellees possess jurisdictional standing to pursue a declaratory judgment action challenging the constitutionality of Ordinance 1917.

## D. Was Certification Proper under Civ.R. 23?

{¶ 25} It is not necessary to review all seven of the class certification elements. New

Miami concedes that it does not contest the trial court's findings regarding the existence of an identifiable class, numerosity, or adequacy of representation by class counsel. Rather, New Miami challenges the trial court's findings regarding the class membership status of the representatives, commonality, typicality, adequacy, and the propriety of certification under Civ.R. 23(B)(2).

{¶ 26} At the outset, we observe that consideration of New Miami's challenge to the class membership status of the representatives is barred by the law-of-the-case doctrine. In *Barrow I*, we held that plaintiffs Woods, Johnson, and McGuire shared the requisite interest and injury with the members of their respective subclasses to serve as class representatives. *Barrow I*, 2014-Ohio-5743 at ¶ 10-18. *See also Warner*, 36 Ohio St.3d at 96-97. A decision rendered by a reviewing court in a case remains the law of that case on legal questions in subsequent proceedings. *Brock v. Brock*, 12th Dist. Clermont No. CA2013-04-026, 2014-Ohio-350, ¶ 38. Accordingly, *Barrow I* operates as law-of-the-case regarding the satisfaction of the implied class membership prerequisite under Civ.R. 23(A).

{¶ 27} We review the remaining findings properly challenged by New Miami for an abuse of discretion. *See Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201 (1987). An abuse of discretion connotes that a ruling was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Id*.

## 1. Commonality

{¶ 28} Civ.R. 23(A)(2) requires commonality of claims in a class action. This involves scrutinizing class claims for a "common nucleus of operative facts, or a common liability issue." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 77, 1998-Ohio-365. The commonality requirement was clarified by the United States Supreme Court in *Wal-Mart v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011). *See also Stammco*, 136 Ohio St.3d 231, 2013-Ohio-3019 at ¶ 29-44 (implementing *Wal-Mart*). The existence of common questions is still

required, but the inquiry does not end there. *Id.* at ¶ 32. Rather, there must be the potential for the claims to "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart* at 2551, quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009). (Emphasis in original.) Where an action involves subclasses, this inquiry must be assessed as to each subclass separately. *See* Civ.R. 23(C)(4)(b).

{¶ 29} All members of Subclass 1 seek repayment of penalties and fines paid pursuant to the ASEP. As the trial court explained, these class members share a common prayer for restitution of monies paid pursuant to the allegedly unconstitutional Ordinance. Despite varied rationales underlying the subclass members' payments, there exist common issues of law that are likely to generate common answers to resolve the litigation. *Wal-Mart* at 2551.

{¶ 30} Similarly, all members of Subclass 2 share a common prayer for relief from application of the allegedly unconstitutional Ordinance. These subclass members seek declaratory and injunctive relief striking down operation of the Ordinance. Their various reasons for failing to pay the penalties do not defeat the common issues of law that underlie resolution of their claims. *Id.*

{¶ 31} Despite New Miami's argument to the contrary, the trial court's failure to invoke the commonality standard as clarified by *Wal-Mart* does not connote an abuse of discretion. As stated, an abuse will not lie where a court merely commits an error of law or judgment. *Marks*, 31 Ohio St.3d at 201. The court's decision must be unreasonable, arbitrary, or unconscionable. *Id.* It was not. The resolution of the litigation does not hinge upon proof of individual appellees' various defenses to infractions recorded by the automated traffic cameras. Rather, a declaration striking down Ordinance 1917 as unconstitutional would resolve the claims of *all* members of both subclasses. We hold that the trial court did not abuse its discretion in finding that the proposed subclasses in the case at bar satisfied the

commonalty requirement imposed by Civ.R. 23(A)(2).

## 2. Typicality

{¶ 32} Pursuant to Civ.R. 23 (A)(3), the claims or defenses of the class representatives must be typical of the claims or defenses of the class. This does not require that the class representatives possess claims or defenses that are identical to those of the putative class members. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 484-485, 2000-Ohio-397. Rather, where a class representative's interests are substantially aligned or not in express conflict with those of the class, typicality is satisfied. *Id.* at 484. *See also Marks*, 31 Ohio St.3d at 202.

{¶ 33} Regarding Subclass 1, the trial court did not abuse its discretion in finding that the claims of Woods and Johnson were typical of the subclass. Although not required, Woods and Johnson are identically situated with all members of the proposed subclass. That is, they are persons who received a Notice of Liability and paid a penalty pursuant thereto. The fact that the amounts paid by these class representatives may vary from other members of the class is inapposite. The following directive, plucked from a leading class action treatise by the Ohio Supreme Court, supports such a finding:

> When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Baughman* at 485, citing 1 Newberg & Conte, *Newberg on Class Actions*, Section 3.13, at 74-77 (3d Ed.1992). Thus, as noted by the trial court, the fact that members of Subclass 1 paid differing amounts does not defeat typicality. All members of the subclass uniformly challenge the due process afforded by the Ordinance, and all advance the same injury and seek the same remedy. As such, the trial court did not abuse its discretion in finding the typicality requirement imposed by R.C. 23(A)(3) was met by Subclass 1.

**{¶ 34}** Similarly, regarding Subclass 2, the trial court did not abuse its discretion in finding that the claims of McGuire were typical of the subclass. Again, though it is not necessary for the class representative to be in the exact same position as all members of the proposed class, McGuire is so situated. Like all other members of Subclass 2, McGuire is a person who received a Notice of Liability and did not pay the penalty. The fact that differing reasons might underlie McGuire's or any other member's decision to forestall payment of the penalty does not obviate typicality. *See Baughman* at 485. All members of the subclass uniformly challenge the due process afforded by the Ordinance, and all advance the same injury and seek the same remedy. Thus, the trial court's determination that Subclass 2 satisfied the typicality requirement under Civ.R. 23(A)(3) did not constitute an abuse of discretion.

### 3. Adequacy of Representation

**{¶ 35}** In accordance with Civ.R. 23 (A)(4), the representative parties must fairly and adequately protect the interests of the putative class members. This issue involves consideration of two distinct elements, namely, adequacy of the class representatives and adequacy of counsel. *Marks*, 31 Ohio St.3d at 203. New Miami does not challenge the trial court's finding that appellees' counsel is capable of representing the class. Instead, New Miami attacks the adequacy of the class representatives.

**{¶ 36}** A class representative satisfies the adequacy requirement where his or her interest is not antagonistic to those of the remaining class members. *Id.* As stated, far from being antagonistic to the interests of the remaining members of Subclass 1, the interests of Woods and Johnson are directly aligned with the rest of the subclass. All are recipients of the Notice of Liability who incurred financial repercussions in the form of payments rendered pursuant to the allegedly unconstitutional Ordinance. All seek a declaration invalidating the Ordinance and disgorgement of their payments.

{¶ 37} The interest of McGuire is similarly harmonious with those of the remaining members of Subclass 2. All are recipients of the Notice of Liability who did not pay the penalty but were subject to financial repercussions in the form of collection agencies and credit reporting as a result of the allegedly unconstitutional Ordinance. All seek a declaration invalidating the Ordinance and enjoining enforcement thereof. Thus, the trial court did not commit an abuse of discretion when it found that the representatives for both subclasses satisfied the adequacy requirement imposed by Civ.R. 23(A)(4).

### 4. Categorization of Action Under Civ.R. 23(B)

### a. General Applicability

{¶ 38} Finally, a proposed class action must fall within the purview of one of the categories delineated by Civ.R. 23(B) in order to be certified. Here, the trial court found that the action qualified for certification under Civ.R. 23(B)(2). This subsection provides that an action is maintainable as a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"

{¶ 39} Certification under Civ.R. 23(B)(2) requires that (1) a proposed class primarily seeks injunctive relief, and (2) the proposed class is cohesive. *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, ¶ 13. Here, cohesiveness of the class is not an issue. Both subclasses complain of conduct perpetrated by New Miami against the class as a whole. *Id.* at ¶ 7. Specifically, appellees challenge alleged due process defects applicable to all those subjected to Ordinance 1917. The propriety of certification under subsection (B)(2) thus turns upon the type of relief sought.

{¶ 40} The primary relief sought by both subclasses is a single declaration that the Ordinance is unconstitutional and a single injunction prohibiting its enforcement. This would provide relief to all members of both subclasses. *Cullen v. State Farm Mut. Auto. Ins. Co.,*

137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 21.

{¶ 41} Additionally, members of Subclass 1 seek restitution of monies paid under the Ordinance. It is true that actions that predominately seek individualized monetary damages are not properly certifiable under Civ.R. 23(B)(2). *Id.* However, as stated, the primary objective in the case at bar is to halt operation of the allegedly unconstitutional Ordinance. *See Maas v. The Penn Cent. Corp.*, 11th Dist. Trumbull No. 2006-T-0067, 2007-Ohio-2055, ¶ 45 (upholding certification under Civ.R. 23(B)(2) where "granting the declaratory and injunctive relief that appellees seek is of greater value to the class members than monetary relief * * *"). Consequently, the trial court did not abuse its discretion in certifying the class under Civ.R. 23(B)(2).

**b. Common Questions Predominate**

{¶ 42} Even if the prayer for damages on behalf of Subclass 1 could not properly be certified under Civ.R. 23(B)(2), the Ohio Supreme Court advocated for certification of "incidental aspects" of a case under Civ.R. 23(B)(3). *Hamilton*, 82 Ohio St.3d at 87, quoting 7A Wright, Miller, & Kane, *Federal Practice and Procedure*, Section 1775, at 470 (2d Ed.1986). Civ.R. 23(B)(3) permits maintenance of a class action where:

> [Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

{¶ 43} The trial court found that this standard was satisfied in the present matter. The court reasoned that common legal issues in the lawsuit constituted significant aspects of the case that were amenable to resolution for all members in a single adjudication. *Marks*, 31 Ohio St.3d at 204. Admittedly, as mentioned, the particular circumstances surrounding each motorist may mean that class members proffer different arguments in their respective defenses. This does not defeat certification under Civ.R. 23(B)(3), however. As noted by the

Ohio Supreme Court:

> The mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class. If it were, then a great majority of motions for class certification would be denied. Civ.R. 23(B)(3) gives leeway in this regard and permits class certification where there are facts common to the class members.

*In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St. 3d 465, 2002-Ohio-6720, ¶ 10.

{¶ 44} Hence, the existence of differing defenses among class members does not obliterate the significance of the legal issues that predominate in this case, namely, the constitutionality of the Ordinance and the propriety of restitution. *Id.* In addition, these factual differences do not make the predominant issues any less capable of resolution in a single adjudication before the trial court. *Id.* Indeed, the court may decide in one stroke whether the procedure established by Ordinance 1917 ensures adequate due process to citizens. This amenability to swift disposition renders class action status superior to other methods for a fair and efficient adjudication of the matter in complicity with Civ.R. 23(B)(3). *Marks* at 204. *See also Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, __ U.S. __, 133 S.Ct. 1184, 1195 (2013). We therefore see no abuse of discretion in the trial court's alternate path supporting certification under Civ.R. 23(B)(3).

{¶ 45} In sum, the trial court's entry on remand reaffirming certification of the class adequately set forth its findings in support of certification. The trial court therefore properly certified the class in the case at bar.

### E. How Does *Walker* Affect *Barrow*?

{¶ 46} During the pendency of the proceedings below, the Ohio Supreme Court released *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461. The high court reaffirmed its holding in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, that municipalities may, pursuant to their home-rule authority under Article XVIII of the Ohio Constitution,

impose civil liability on traffic violators through the use of automated red light cameras. *Walker* at ¶ 3, 21. The court ruled that the ordinance in that case did not unlawfully usurp the jurisdiction of municipal courts over traffic violations. *Id.* at ¶ 22-25. In addition, the court held that municipalities' home-rule authority permitted them to establish civil administrative proceedings that must be exhausted before traffic violators may pursue judicial remedies. *Id.* at ¶ 26-28.

**{¶ 47}** New Miami insists that any members of either subclass who did not have an administrative hearing lack standing to contest the constitutionality of the hearing procedures afforded by Ordinance 1917. Alternatively, New Miami maintains that the issuance of the decision in *Walker* by the Ohio Supreme Court transformed appellees' constitutional challenge from facial to as applied.

**{¶ 48}** This court is of the opinion that we are not authorized to address the effect of *Walker* on *Barrow* at this time. The only final appealable order before us is the trial court's February 2015 decision certifying the class. The trial court's pre-certification decision granting partial summary judgment to appellees on their first three claims is not yet before us. *See generally State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 1997-Ohio-366. Whether or not the administrative procedure established by Ordinance 1917 in fact satisfies procedural due process is not yet before us. Similarly, whether or not *Walker* nullifies all or part of appellees' claims is a merits issue. Any proclamation we make on the effect of *Walker* at this stage would be advisory. We therefore decline to address *Walker* at this phase of the litigation.

### III. CONCLUSION

**{¶ 49}** Pursuant to the foregoing analysis, we hold that the trial court's February 2015 decision reaffirming class certification sufficiently enunciated the bases upon which the court made its decision in support of class certification. Accordingly, we affirm the trial court's

certification decision.

**{¶ 50}** Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.