[Cite as *Gembarski v. Partssource, Inc.*, 2017-Ohio-8940.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO


| | | |
|---|---|---|
| EDWARD F. GEMBARSKI, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2016-P-0077** |
| - vs - | : | |
| PARTSSOURCE, INC., | : | |
| Defendant-Appellant. | : | |


Civil Appeal from the Portage County Court of Common Pleas, Case No. 2013 CV 0001.

Judgment: Affirmed.


*Thomas J. Connick*, Connick Law, LLC, 25550 Chagrin Blvd., #101, Beachwood, OH 44122 (For Plaintiff-Appellee).

*Jeffrey J. Wedel, Stephen S. Zashin,* and *Helena Oroz,* Zashin & Rich Co., L.P.A., Ernst & Young Tower, 950 Main Avenue, 4th Floor, Cleveland, OH 44113 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, P.J.

{¶1}   Appellant, PartsSource, Inc., appeals from the judgment of the Portage County Court of Common Pleas, granting a motion to certify class action filed by appellee, Edward F. Gembarski.  At issue is whether a class defined as all current and former employees who earned commissions from the sales of medical equipment and whose earned commissions were subject to rescission if the accounts were not paid

within a ninety-day period satisfies the requirements of Civ.R. 23 for certification. We affirm the trial court's judgment.

{¶2} On October 1, 2012, appellee filed a class-action complaint for damages against appellee in the Summit County Court of Common Pleas. Appellee filed an answer and the case was transferred to the Portage County Court of Common Pleas by stipulation of the parties. On September 22, 2015, appellee filed a motion to certify class action and a motion to modify/amend class definition. Appellee opposed the motion. On March 31, 2016, the motion to modify/amend class definition was granted On May 2, 2016, appellant filed a brief in opposition to appellee's motion to certify class action and, on June 23, 2016, a class certification hearing was held before the magistrate.

{¶3} On September 30, 2016, the magistrate issued findings of fact and conclusions of law. The following are taken from the magistrate's findings:

{¶4} "Mr. Gembarski was an Account Representative, i.e., salesman, who sold medical replacement parts. PartsSource is in the business of selling medical equipment replacement parts.

{¶5} "Mr. Gembarski was paid by commission only. He did not receive a salary.

{¶6} "There were allegedly at least 75 persons who were in the same position as Mr. Gembarski and earned their commissions in the same manner he did. Other employees have placed that number, to their knowledge, at anywhere between 45-65.

{¶7} "Commissions are allegedly earned when a part is sold and then delivered to a customer, and then paid to the Account Manager within 30 days therefrom on the

2

next commission statement. Then, that money actually went into the Account Manager's paycheck and allegedly became their personal property.

{¶8} "PartsSource allegedly took back the commissions allegedly earned by Plaintiff and the putative class, and that money has never been returned. And this same alleged wrongful taking of the alleged earned commissions happened to Mr. Gembarski as well as approximately 75-120 other Account Managers. Mr. Gembarski has personal knowledge of the list of Account Managers PartsSource regularly sent out advising that they were having their commissions pulled, and whose complaints were exactly the same as Mr. Gembarski's.

{¶9} The court certified the class and defined the same as follows: "All current and/or former PartsSource, Inc. Account Managers and/or employees who are or ever have been subject to Defendant PartsSource, Inc.'s policy and wrongful practice of reducing, withholding or deducting, i.e. taking back or 'pulling' earned commissions on sales of medical equipment and/or supplies."

{¶10} Appellant filed objections to the magistrate's decision, which were opposed by appellee. Ultimately, the trial court overruled appellant's objections and adopted the magistrate's decision. Appellant now appeals and assigns three errors for our review. Its first assignment of error provides:

{¶11} "The trial court abused its discretion by adopting the magistrate's findings, which adopted appellee's proposed findings verbatim, over appellant's objection where the record does not contain competent and credible evidence supporting those findings."

3

**{¶12}** "A trial court must conduct a rigorous analysis when determining whether to certify a class pursuant to Civ.R. 23 and may grant certification only after finding that all of the requirements of the rule are satisfied; the analysis requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts and the applicable legal standard, that the requirement is met." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, paragraph one of the syllabus.

**{¶13}** The Ohio Supreme Court has identified seven prerequisites for maintaining a class action derived from Civ.R. 23:

**{¶14}** "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met." *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 71 (1998).

**{¶15}** Moreover, "Civ.R. 23(B)(3) states that in order to certify a class in an action for damages, two findings must be made by the trial court. First, it must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and second, the court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Consol. Mgte. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-

4

Ohio-6720, ¶7. "A party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule. *Cullen*, *supra*, at paragraph three of the syllabus.

{¶16} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent an abuse of discretion." *Marks v. C.P.Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. The abuse of discretion standard "applies to the ultimate decision of the trial court, * * * as well as to its determination regarding each requirement of the rule." *Cullen*, *supra*, at ¶19. Nevertheless, as in a general civil case, where "the burden of persuasion is only by a preponderance of the evidence, * * * evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶19, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶19.

{¶17} Under its first assignment of error, appellant contends the trial court erred by adopting, verbatim, appellee's proposed findings of fact and conclusions of law, despite the submission being "replete with verbatim errors, misstated testimony, and other inaccuracies." Appellant incorporates by reference its "forty-two objections, filed with the trial court on October 4, 2016," but, "in interest of brevity," provides illustrative examples of errors in the magistrate's decision.

{¶18} First, appellant challenges the magistrate's finding that appellee seeks certification "of a class of Account Managers who sold medical equipment and/or parts for Defendant PartsSource," and, in a footnote, observed that "Account Managers,

Sales Representatives and Customer Service Representatives are used, at times, interchangeably herein." Appellant counters that, at the certification hearing, appellee testified that the proposed class included account managers, senior account managers, and strategic account managers, but not product managers. Appellant also notes that Charles Koch, its Chief Administrative Officer, testified that different categories of employees were compensated differently so that the titles were not interchangeable.

{¶19} We find the objection fails to identify a recognizable error. The class certified by the trial court includes any of appellant's employees who received commissions from the sale of medical equipment and/or supplies and who were subject to an allegedly improper policy of having earned commissions rescinded. Membership in the class does not depend on job title, responsibilities, or overall compensation package. Moreover, Koch testified by deposition that there were a variety of titles that were applied to salespersons who were, nonetheless, paid by commission.[1]

{¶20} Appellant next asserts the magistrate erred when it found that appellee was employed with it through 2011 when, in fact, he was employed through 2012. Appellant acknowledges that the trial court recognized this objection as valid and corrected the error, but counters that if the court had conducted a thorough review of the Magistrate's Decision before adopting it, there would have been no need to raise an objection.

---

1. He attested: "I don't know exactly what [title] we use today, but we started with, we called it a customer sales rep or representative, CSR. As the company grew, it became obvious that the title was a little confusing to our customers, so we made a change to account manager. We may even have senior account managers. It just provided a more significant title for that position as people like Ed [Gembarski], whatever, interacted with our customers.

{¶21} Appellant also maintains the magistrate erred when it identified appellee as an Account Representative, not acknowledging that he held other positions and/or titles during his employment with it.

{¶22} These objections are inconsequential to the ultimate issue of class certification. As such, any error is harmless as a matter of law.

{¶23} Next, appellant argues the magistrate erred in finding that at least 75 persons "were in the same position as Mr. Gembarski and earned their commissions in the same manner he did." Appellant counters that appellee testified that he only had personal knowledge of six other employees' compensation plans and, therefore, speculated about the actual number.

{¶24} We discern no error in the foregoing. The magistrate's finding fairly reflects appellee's testimony, which was based on complaints he heard from approximately 50 or 60 other salespersons ("100 percent" of them) who had commissions "pulled back." The magistrate also cited the deposition testimony of Daniel Brenner, the Director of Customer Implementation for appellant, who estimated that there were between 45 and 65 persons who sell medical parts for commission at any given time. Koch in his deposition testimony referred to "140 or so sales reps" who had received reduced commissions over a number of years. The magistrate's finding is therefore adequately supported by the record.

{¶25} Appellant next contends the magistrate's finding that a salesperson's "money actually went into the Account Manager's paycheck and allegedly became their personal property" is based only on appellee's opinion. We do not agree.

7

{¶26} The magistrate properly conditioned the status of the money that went into a salesperson's paycheck by the use of the qualifying adverb "allegedly." That such money became the salesperson's personal property was not only Gembarski's opinion, but that of Brenner and Koch as well. The point at which a commission is actually earned is, of course, one of the ultimate factual issues to be decided in this case. For the purpose of class certification, the magistrate is not deciding the ultimate issues of the case, but merely describing appellee's theory of recovery. Such analysis is expressly sanctioned by the Ohio Supreme Court. *See Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, syllabus. ("At the certification stage in a class-action lawsuit, a trial court must undertake a rigorous analysis, which may include probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23.")

{¶27} With respect to appellant's remaining 37 objections, we decline to consider them as they have not been properly raised before this court. "Parties cannot simply incorporate by reference arguments they made to the trial court in their appellate brief." *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. Summit No. 28069, 2016-Ohio-7090, ¶14, fn. 1, citing App.R. 16(A)(7) ("[t]he appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review") and App.R. 12(A)(2) ("[t]he court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)"); *see also Kulikowski v. State Farm Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 80103, 2002-Ohio-5460,

8

("the Rules of Appellate Procedure do not permit parties to 'incorporate by reference' arguments from other sources.")

**{¶28}** Appellant's first assignment of error lacks merit.

**{¶29}** For its second assignment of error, appellant asserts:

**{¶30}** "The trial court abused its discretion in adopting the magistrate's finding of fact and conclusion of law which by improperly engaging in a merits based inquiry, certifying a proposed class that is unascertainable and ordering PartsSource to ascertain the putative class members."

**{¶31}** "An identifiable class must exist before certification is permissible" and "[t]he definition of the class must be unambiguous." *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91 (1988), paragraph two of the syllabus. "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." (Citation omitted.) *Hamilton*, *supra*, at 71-72. "Thus, the class definition must be precise enough 'to permit identification within a reasonable effort.'" *Id.* at 72, quoting *Warner*, *supra*, at 96.

**{¶32}** The magistrate deemed the identifiable class requirement satisfied as the "[c]lass definition identifies all Account Managers who have been subject to the taking back or pulling of alleged earned commissions" and appellant "is able to determine the identity of all Account Managers who had their alleged earned commissions pulled from them."

**{¶33}** Appellant maintains that the defined class is improper because it is conclusory, i.e., it presumes that its "policy or practice" was "wrongful" or even "illegal"

9

and that the retained commissions had been "earned." Appellant further challenges the ascertainability of the class on the grounds that its business records are inadequate to determine which salespersons are members of the class: "While [appellant] can identify employees who earned commissions, as well as employees who had commissions pulled, its business records do not, and could not, show the alleged exposure to any alleged wrongful conduct." We do not agree.

{¶34} As noted above, the defining characteristic of the proposed class is that it includes salespersons who have had commissions withheld, regardless of whether, ultimately, the commissions were withheld rightfully or wrongfully. The defined class is not conclusory but properly fixed according to a neutral criterion, i.e., appellant's policy of withholding commissions. *Hamilton*, *supra*, at 73 ("where possible [the class] should be defined upon the basis of the manner in which the defendant acted toward an ascertainable group of persons." (Citation omitted.)

{¶35} It is important to note that there was evidence before the magistrate that appellant's policy was a uniform policy and, thus, a suitable criterion for defining the class. Jeffrey Dalton, appellant's Chief Operating Officer, testified as follows by deposition:

{¶36} Q. The policy of PartsSource to, as [the job description] says, "to reduce the commissions earned" in that paragraph, the policy of PartsSource to reduce the commissions earned for amounts on a[n] invoice that are not collected within 90 days, that is applied uniformly, is it not, to all account managers and sales representatives who sell medical parts on a commission basis?

{¶37} A. Yes.

10

**{¶38}** * * *

**{¶39}** Q. This over 90 policy was instituted unilaterally by PartsSource, correct?

**{¶40}** A. Correct.

**{¶41}** Q. You understand what I mean by the term "unilaterally?"

**{¶42}** A. All account managers.

**{¶43}** Q. Well, that's uniformly. But yeah, it's all account managers.[2]

**{¶44}** Similar testimony was given by Brenner, the Director of Customer Implementation:

**{¶45}** Q. And you said, and I'm quoting you, if the customer does not pay within 90 days you will lose the commission on that sale.

**{¶46}** A. Yes.

**{¶47}** Q. And that's the commission you earned from the previous month or whatever month before * * *[,] correct?

**{¶48}** A. Yes. Yeah, that's - - I think you worded that correctly. It sounds right. Yeah.

**{¶49}** Q. And that was a policy across the board for all sales representatives who sold on commission, correct?

**{¶50}** A. As far as I know, yes.

**{¶51}** Appellant also argues that being subject to the withholding policy is not a definite criterion because some commissions were ultimately reinstated to the salespersons, depending on a variety of circumstances in which the customer ultimately paid the invoice. This, plus the fact that different employees had different compensation

---

2. Dalton disputed the assertion that the withholding policy was instituted unilaterally.

plans, requires "the trial court to resolve the merits of every putative class member's claim before determining whether the person is a class member."

**{¶52}** These considerations, which more properly apply to the element of commonality, do not compromise the identifiability of the class. "The mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class." *Consol. Mgte. Satisfaction Cases, supra,* at ¶10; *see also Hamilton*, *supra*, at 81-82 ("'a trial court should not dispose of a class certification solely on the basis of disparate damages,'" particularly "where * * * damages may be calculated by a mathematical formula") (citation omitted); *Rimedio v. SummaCare, Inc.*, 9th Dist. Summit No. 21828, 2004-Ohio-4971, ¶21 (affirming the certification of a class comprising all SummaCare providers subject to a ten percent withhold of service fees despite the fact that "some of the physicians were solo practicioners, while some were working for partnerships" and "not all of the physicians signed their contracts at the same time [whereas] some knew of the withholds before signing, while others did not.")

**{¶53}** Finally, appellant contends the magistrate relied on impermissible evidence, i.e., "Disc A," a "spreadsheet that [appellant] produced in response to a discovery response in August 2013 * * * reflect[ing] only commission amounts during a limited period of time that the Company did not reimburse, without any indication of whether customers ultimately *paid* on those transactions." (Emphasis sic.) Appellant contends that Disc A cannot show whether salespersons who had "earned commissions" rescinded actually received "appropriate reimbursement under the terms of their specific compensation plans" and that appellee impermissibly raised Disc A as evidence in his reply brief in support of class certification.

**{¶54}** We see nothing impermissible about the magistrate's consideration of Disc A. Contrary to appellant's characterization, appellee's use of Disc A is not a "new argument" but evidence duly produced during discovery and introduced into evidence as an attachment to the reply brief prior to the certification hearing, the contents of which were thoroughly discussed in Koch's deposition testimony. The magistrate properly described the contents of Disc A as "the identities of well over one hundred (100) Account Managers who have had their alleged earned commissions pulled and whose money has not been returned to them." There was no claim that Disc A resolved issues of damages or ultimate liability.

**{¶55}** Appellant's second assignment of error lacks merit.

**{¶56}** Appellant's third assignment of error provides:

**{¶57}** "The trial court abused its discretion in summarily concluding that appellee satisfied Civ.R. 23's seven prerequisites, where the record does not contain competent and credible evidence supporting that conclusion, and where such conclusion is against the manifest weight of the evidence."

**{¶58}** Under its third assignment of error, appellant contends that appellee failed to satisfy Civ.R. 23's remaining prerequisites for class certification. As noted above, the prerequisites are (1) identifiability (which we have previously determined to be adequate); (2) class membership (which, again, we have concluded was met); (3) numerosity; (4) commonality; (5) typicality; (6) adequacy of representation; and (7) one of the three Civ.R. 23(B) requirements must be met. *Hamilton*, *supra.*

**{¶59}** With respect to numerosity, appellant claims "Gembarski has never proffered any evidence-based indication of the number of people in the proposed class."

13

For purposes of certification, it is sufficient that the evidence discussed above supports the finding of a class of at least 75 persons. While the "courts have not specified numerical limits for the size of a class action * * * '[i]f the class has more than forty people in it, numerosity is satisfied.'" (Citation omitted.) *Warner*, *supra*, at 97; *see also Maas v. The Penn Cent. Corp.*, 11th Dist. Trumbull No. 2006-T-0067, 2007-Ohio-2055, ¶53 ("generally, if a proposed class consists of more than forty individuals, numerosity is met.")

{¶60} With respect to commonality, appellant contends that appellee's "claims are not susceptible to class-wide determinations." On the contrary, we agree with the magistrate that all class claims arise from "the same nucleus of operative facts surrounding the alleged wrongful withholding, and refusal to return, of alleged earned commissions." That appellant engaged in the alleged conduct is undisputed and constitutes a common nucleus of fact similar to all salespersons affected by it. "Courts generally have given a permissive application to the commonality requirement," construing it "to require a 'common nucleus of operative facts.'" *Warner*, *supra*, at paragraph three of the syllabus.

{¶61} With respect to typicality, appellant contends appellee's complaint proposed a class of persons subject to "the plan" whereas the class as certified comprises persons subject to a purported "policy and wrongful practice." Appellant, however, cites no authority for the proposition that the certified class must conform to the class proposed in the complaint. Rather, the Ohio Supreme Court has itself on several occasions directed the modification of the class definition to fit the circumstances of the case. *See e.g. Warner*, *supra*, at 99 ("[o]n remand, we direct the

14

trial court to modify the scope of the class, consider the creation of subclasses in this action, bifurcate trials on liability issues, and exclude the individual defendants-appellants from this action until they are given a proper certification hearing."); *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 484 (2000) ("the definition of the class that appellants seek to have certified is hereby modified" to reflect the factual record.)

{¶62} Appellant additionally contends that appellee fails to satisfy the typicality and the adequacy requirements because he is "only one of three employees who did not sign an arbitration agreement." Appellant relies on the Ninth Appellate District's decision in *Rimedio*, *supra*, where the court held the typicality requirement was not met where the sole class representative had waived his right to arbitration and approximately half of the putative class was subject to arbitration.

{¶63} In this case, appellant did not assert the arbitration defense in its answer to the complaint and, indeed, did not assert the defense until after mediation failed and appellee filed his motion for class certification. The magistrate determined that appellant had waived the defense because, after three years of litigation and having notice of the matters at issue in the class action, not the least of which was class certification, it never asserted, let alone sought to pursue, arbitration. The magistrate found appellant's dereliction was manifestly inconsistent with its right to arbitrate and/or assert that right as a defense to the class certification. Under the circumstances, the magistrate's conclusion was not an abuse of discretion.

{¶64} The right to arbitrate can be waived. *EMCC Inv. Ventures, LLC v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶33. "'When the defendant [files]

15

its answer in [a] suit without demanding arbitration, it, in effect, [agrees] to the waiver.'" *Hoffman v. Davidson,* 11th Dist. Trumbull No. 3909, 1988 WL 32967, *2 (Mar. 11, 1988), quoting *Mills v. Jaguar–Cleveland Motors, Inc.,* 69 Ohio App.2d 111, 113 (8th Dist.1980). In *Hogan v. Cincinnati Fin. Corp.,* 11th Dist. Trumbull No.2003-T-0034, 2004-Ohio-3331, this court stated:

{¶65} "To prove waiver, the opposing party merely needs to show: (1) that the party waiving the right knew of the existing right of arbitration and (2) that the party acted inconsistently with that right. * * * 'Active participation in a lawsuit * * * evidencing an acquiescence to proceeding in a judicial rather than arbitration forum has been found to support a finding of waiver.' *Griffith* [*v. Linton,* 130 Ohio App.3d 746, 751 (10th Dist.1998)]." *Hogan*, *supra*, at ¶23-24.

{¶66} Appellant was aware of its right to assert the arbitration defense from the inception of the underlying class action. After all, a class action cannot proceed without certification of a class and, in his complaint, appellee specified the details, including appellant's alleged misconduct and harm suffered by potential class members, that would be used to qualify the potential putative class members for certification. Although appellee was not a party to the arbitration provision, an issue going to typicality and adequacy, appellant had notice that other potential class members who suffered from the harm alleged in the complaint would be bound by the arbitration clause. We maintain appellant's failure to assert the arbitration defense in its answer, or a supplement thereto, or seek to enforce the right to arbitration at some point prior to its opposition to the certification was fundamentally inconsistent with its right to assert the defense. We therefore conclude the magistrate was not unreasonable in concluding

16

appellant waived the arbitration defense to the typicality and adequacy elements of class certification. Accordingly, we hold the trial court did not abuse its discretion in adopting the magistrate's decision.

{¶67} Because we hold the trial court was correct in concluding the arbitration defense was waived, we additionally conclude the typicality requirement was met. To wit, we discern no express conflict between appellee and other class members. *See Marks v. C.P. Chemical Co., Inc.* 31 Ohio St.3d 200, 202 (1987). And the allegations arose from a common nucleus of operative facts; namely, appellant's taking account managers' alleged earned commissions and failing to return those commissions to the employees. Similarly, appellee meets the adequacy requirement to the extent his interests are not antagonistic to the other class members. *Id.* at 203. In effect, appellee can fairly and adequately protect the interests of the class. *Id.*

{¶68} Finally, appellant contends appellee failed to meet the predominance/superiority requirements of Civ.R. 23. Civ.R. 23(B)(3) states a class action may be maintained if:

{¶69} "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

{¶70} "(a) the class members' interests in individually controlling the prosecution or defense of separate actions;

{¶71} "(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

**{¶72}** "(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**{¶73}** "(d) the likely difficulties in managing a class action."

**{¶74}** Here, the magistrate determined the differences in individual class-member's contracts, as well as potential statute-of-limitations problems with individual claims, were insufficient to undermine the conclusion that there were adequate questions of law and/or fact that predominate the class as a whole. The magistrate further determined the class action was superior to other methods of fair and efficient adjudication of the controversy because (1) no other person within the putative class expressed an interest in separately prosecuting the allegations in this matter; (2) appellee is the only current or former employee to have commenced suit relating to the alleged wrongdoing; (3) appellee sought out the forum in which the case was being prosecuted, without objection, thereby suggesting the concentration of the litigation was desirable; and (4) there would be no significant difficulty in managing the class action because each class member has a claim arising from the same nucleus of operative facts and legal theories – "all of which can be resolved in a single stroke under the class action mechanism." The foregoing findings are reasonable and, as a result, the trial court did not abuse its discretion in adopting the magistrate's decision certifying the class.

**{¶75}** Appellant's final assignment of error is without merit.

**{¶76}** For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.

18

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶77} I concur with the majority's well-reasoned decision. I write separately simply to point out that the issue of whether appellee satisfies the typicality and adequacy requirements for certifying a class action, since he was not party to an arbitration agreement with appellant, whereas other members of the proposed class were, has been foreclosed by the May 26, 2017 decision in *Natl. Labor Relations Bd. v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir.2017), which appellee filed with this court as supplemental authority. In that case, the NLRB sought enforcement of its decision and order regarding James DeCommer, a former technician for Alternative Entertainment, Inc. *Id.* at 396. DeCommer's employment agreement specifically contained both an arbitration clause, and a waiver of the right to seek relief by way of class action. *Id.* at 397. In relevant part, the Sixth Circuit found this waiver of DeCommer's right to pursue a class action for employment based relief violated the National Labor Relations Act. *Id.* at 400-408. The Sixth Circuit recognized its decision complied with prior decisions by the Seventh and Ninth Circuits, but conflicted with the position taken by the Fifth and Eighth Circuits. *Id.* at 401.

{¶78} Applying *Alternative Entertainment, Inc.* to this case effectively negates any argument that the arbitration clauses in the balance of the contracts of the proposed

19

class members mean they cannot pursue a class action. Thus, appellee is typical of the class, and adequately represents it, even though he was not subject to arbitration.

{¶79} While the Sixth Circuit's decision is not controlling over this court, it is highly persuasive. I think it would be unwise to set up a conflict between the Ohio courts and the federal courts on this issue. That would merely encourage forum shopping.

{¶80} I respectfully concur.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶81} I respectfully dissent. The law is well-settled that a named plaintiff fails to satisfy the typicality/adequacy requirement of Civil Rule 23(A)(3) where the members of the putative class he or she seeks to represent are subject to an arbitration agreement to which the named plaintiff is not subject. *Rimedio v. SummaCare, Inc.*, 9th Dist. Summit No. 21828, 2004-Ohio-4971, ¶ 25-27; *Rimmer v. Citifinancial, Inc.*, 2013-Ohio-5732, 6 N.E.3d 621, ¶ 22-25 (8th Dist.); *also Tan v. Grubhub, Inc.*, N.D.Cal. No. 15-cv-05128-JSC, 2016 WL 4721439, * 3 (July 19, 2016) (cases cited).

{¶82} Gembarski, in contrast to the class he proposes to represent, is not subject to an arbitration agreement. Accordingly, he does not satisfy the typicality/adequacy requirement.

{¶83} The majority, however, adopts the lower court's unreasonable position that PartsSource "waived the arbitration defense to the typicality and adequacy elements of class certification." It is difficult to fathom how this is so given that PartsSource raised the issue of arbitration in its Brief in Opposition to Plaintiff's Motion to Modify/Amend

20

Class Definition. The majority concludes, nonetheless, that PartsSource "was aware of its right to assert the arbitration defense from the inception of the underlying class action" and, therefore, its "failure to assert the arbitration defense in its answer, or a supplement thereto, or seek to enforce the right to arbitration at some point prior to its opposition to the certification was fundamentally inconsistent with its right to assert the defense." *Supra* at ¶ 66.

{¶84} The majority is incorrect to assert that PartsSource should have raised the defense in its answer or "a supplement thereto." The present action was filed by Gembarski as the only proposed class representative. Unlike a majority of the proposed and unnamed class members, Gembarski was not and had never been subject to an arbitration agreement. There is no rational justification for why PartsSource should have raised the defense of binding arbitration at this point in the litigation against a party who is not subject to arbitration. *Compare Smith v. Bayer Corp.*, 564 U.S. 299, 313, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011) (it would be a "novel and surely erroneous argument [to suggest] that a nonnamed class member is a party to the class-action litigation *before the class is certified*") (citation omitted).

{¶85} Preliminarily, it should be noted that, on account of Ohio's "strong public policy in favor of arbitration," the party asserting waiver bears a "heavy burden of proving waiver" which should not be lightly inferred. (Citation omitted.) *U.S. Bank Natl. Assn. v. Allen*, 2016-Ohio-2766, 52 N.E.3d 1237, ¶ 14 (3d Dist.). To find waiver, the courts generally require that the party possessing the right to arbitrate act inconsistently with that right. *EMCC Invest. Ventures, LLC v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶ 34.

**{¶86}** PartsSource has not acted inconsistently with its right to arbitrate. In its Answer, PartsSource denied that Gembarski's action could be maintained as a class action, specifically denying that Gembarski's claims were typical of the proposed class and that he could fairly and adequately protect the class. It would have been premature for PartsSource to plead affirmative defenses that had no relevance to Gembarski's claims, such as the right to arbitrate, considering that Gembarski, as a non-party to the arbitration agreements, could neither have compelled or been compelled to arbitrate. In any event, PartsSource did expressly reserve "the right to plead additional defenses as discovery reveals such defenses to be available." *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, 939 N.E.2d 928, ¶ 32 (10th Dist.) ("an arbitration defense, pursuant to R.C. 2711.02, is not an affirmative defense under Civ.R. 8(C)," and "is not mandated by Civ.R. 8(C) to avoid waiver"); *Rimedio*, 2004-Ohio-4971, at ¶ 14 ("[a]ppellants could not have waived the right to assert the arbitration clause against the unnamed class members").

**{¶87}** The majority's position is anomalous because the specific issue before the trial court was Gembarski's suitability as a class representative, not whether PartsSource could have potentially raised the arbitration defense against hitherto putative class members.

**{¶88}** This anomaly has been recognized by federal courts addressing similar situations, holding that a proposed class representative lacks standing to even raise the issue of waiver with respect to putative class members.[3] "[F]undamentally, the named plaintiffs lack standing to assert any rights the unnamed putative class members might

---

3. "Class actions are governed by Ohio Civ.R. 23. Given the similarity between the rules, federal case law interpreting F.R.C.P. 23 is persuasive when interpreting the Ohio rule." *West v. Carfax, Inc.*, 11th Dist. Trumbull No. 2008-T-0045, 2009-Ohio-6857, ¶ 10.

have to preclude [a defendant] from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question." *In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1039 (11th Cir.2015).

> Absent class certification, there is no justiciable controversy between [a defendant] and the unnamed putative class members. Furthermore, because the unnamed putative class members are not yet before the court, any claims that they might have against [a defendant] necessarily exist only by hypothesis. In the absence of both live claims and cognizable plaintiffs, the District Court's pronouncement purporting to definitively foreclose the arbitration of the hypothetical claims that might be raised in the future by hypothetical plaintiffs cannot be regarded as anything but an impermissible "advisory opinion[ ] on [an] abstract proposition[ ] of law." *Hall* [*v. Beals*]*,* 396 U.S. [45,] 48, 90 S.Ct. [200,] 202 [(1969)].

*Id.* at 1037; *Conde v. Open Door Marketing, LLC*, 223 F.Supp.3d 949, 960 (N.D.Cal.2017) ("[p]laintiffs are not personally affected by the arbitration agreements at issue because they have not signed agreements that contain similar terms," and "therefore have no interest in the enforceability of the arbitration agreement itself, and lack the ability to challenge the agreements on behalf of individuals who did sign such agreements"); *Tan*, 2016 WL 4721439, at * 6 (the named plaintiff "has no standing to challenge the applicability or enforceability of the arbitration and class action waiver provisions * * * because, in light of his decision to opt out, they do not apply to him") (cases cited).

**{¶89}** Contrary to the position of the concurring judge, *Natl. Labor Relations Bd. v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir.2017), does not foreclose the issue of whether Gembarski satisfies the typicality and adequacy requirements for class certification. That case held "that an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable." *Id.* at 408. Not only has Gembarski not signed an arbitration agreement, but the arbitration agreements signed by the unnamed putative plaintiffs did not contain provisions requiring that employment-related claims be arbitrated individually. The relevance of *Alternative Entertainment* is difficult to discern. In any case, by applying the majority's logic, it could be argued that, if the arbitration agreements to which Gembarski was not a party did contain such provisions, PartsSource has waived the right to enforce these hypothetical provisions by not raising the issue in its answer or supplement thereto. With or without class action waiver clauses, Gembarski does not satisfy the typicality and adequacy requirements.

**{¶90}** For the foregoing reasons, I respectfully dissent and would reverse the decision of the court below.